### UNITED STATES of America, Plaintiff–Appellee,

v.

### Jane CRAWFORD, Defendant– Appellant.

### No. 99–50803.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 13, 2000.[1]

Filed Jan. 23, 2001.

As Amended Feb. 14, 2001.

**1.** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Gail Ivens, Glendale, California, for the defendant–appellant.

Alejandro N. Mayorkas, United States Attorney, John S. Gordon, Assistant United States Attorney, Ranee A. Katzenstein, Assistant United States Attorney, Los Angeles, California, for the plaintiff–appellee.

**2.** The Honorable William Alsup, United States District Judge for the Northern District of California, sitting by designation.

**3.** The painting is alternately referred to as *Frost Flowers, Ipswitch 1889* and *Frost Flowers* in the record.

Before: TASHIMA and TALLMAN, Circuit Judges, and ALSUP, District Judge.[2]

ALSUP, District Judge:

Jane Crawford appeals her jury convictions for two counts each of wire fraud and interstate transportation of property stolen, converted, or taken through fraud. The jury implicitly found that Crawford took a valuable oil painting from her office at UCLA, intending to deprive the owner of its use, and sold it for profit, knowing that it had been stolen, converted, or taken through fraud. The jury also implicitly found that Crawford (or a co-schemer) had sent and received interstate faxes to advance her scheme to obtain money through false pretenses. The dispositive issue in this appeal is whether sufficient evidence supported the convictions. We conclude that it did, and affirm.

### Statement

*Frost Flowers, Ipswitch 1889*, an oil painting by the influential arts-and-crafts artist Arthur Wesley Dow, hung on the wall of Crawford's UCLA office in the early 1990s.[3] Crawford was UCLA's Director of Counseling, College of Letters and Sciences. In 1995, she took the painting from her office and, with the help of a middleman named Ken Weaver, secretly sold it.

In May 1999, a federal grand jury indicted Crawford on two counts of wire fraud in violation of 18 U.S.C. § 1343, and two counts of interstate transportation of property converted and obtained through fraud, in violation of 18 U.S.C. § 2314.[4] Crawford pleaded not guilty, and a three-

**4.** A fifth count had been dismissed on the government's motion.

day jury trial began. At the end of the government's case, and after hearing argument, the court denied Crawford's Rule 29 motion for acquittal. The jury found Crawford guilty on all four counts.

The parties agree that Arthur Wesley Dow's widow gave *Frost Flowers*, along with seven other Dow paintings, to the Arthur Wesley Dow Association in 1928. The government presented evidence that the Association had been affiliated with the University of California, Southern Branch—the precursor to UCLA. In addition, "Los Angeles Normal School" was stenciled on the back of the canvas. Los Angeles Normal School, a teachers' college in the 1880s, later became part of the University of California, Southern Branch. When the Arthur Wesley Dow Association dissolved, the government asserted, *Frost Flowers* remained with UCLA (or its predecessor).

Craig Cunningham, a UCLA employee supervised by Crawford, first saw *Frost Flowers* in UCLA's Office of the Registrar in Murphy Hall in the 1970s. In 1979, he took the painting to his office at the urging of the Registrar, who was remodeling. When Cunningham found that his office did not have enough wall space, he took the painting home. *Frost Flowers* hung over his mantel for about ten years. He testified that he had never thought of *Frost Flowers* as his, but considered it UCLA's property. He did not hide it from his UCLA supervisors and colleagues when they visited his home, and he told them that it belonged to the University.

In the early 1990s he brought it back to UCLA, placing it in a storage room, and mentioning it to Crawford because he knew that she had admired the painting. She retrieved it from the storage room, and hung it on her office wall, where it remained for several years. During that time, she had conversations with her UCLA colleague Judith Collas in which, Collas testified, Crawford indicated her understanding that UCLA owned the painting. In one such conversation, they spoke about the "irony that UCLA owned

such a valuable painting and didn't know it."

In 1994, however, Crawford began preparations to sell the painting. The government presented evidence that she called her father's trust attorney and asked about selling some paintings, including *Frost Flowers* by Arthur Wesley Dow, that her father had bought, she falsely claimed, while living in Utah years before. At Crawford's (or her father's) direction, the attorney wrote a "to whom it may concern" letter on the trust's behalf, noting that it had retained Kenneth Weaver to secure buyers for the paintings. In March 1995, Crawford called her tax accountant to ask about the tax consequences of selling a painting that had been given to her, she said, by a professor friend at UCLA.

In June 1995, Weaver contracted with Spanierman Gallery to sell *Frost Flowers* for $200,000. The contract was faxed between California and New York for signatures. Weaver deposited the $200,000 from Spanierman Gallery into an account in his name. He wrote several checks on the account to pay for goods and services for Crawford. He also wrote checks on the account to pay off her debt.

Meanwhile, Crawford's UCLA colleague Judith Collas noticed that *Frost Flowers* was no longer in Crawford's office. Crawford told her that a student at Cal Arts in Valencia was restoring it, under a professor's supervision. She told Cunningham the same story. In fact, there was no evidence that Crawford had ever sent the painting to be restored, and a Spanierman Gallery representative testified that it arrived in poor condition.

The government called Michael Trentalange, UCLA's Executive Director of External Affairs, to testify about the University's policies for acquiring and disposing of property. Before his current post, he had served as Executive Director of Information Systems and as Executive Director of Gift Policy and Information Systems.

When an "affiliated organization" dissolves, Trentalange said, its property remains with UCLA. He testified over Crawford's objection that UCLA considers an "affiliated organization" to be one that uses the University's name, facilities, personnel, or equipment in its activities.

He next testified about UCLA's procedures for disposing of property. Typically a unit head—such as a dean, a director, or a faculty chairperson—decides that a particular asset is no longer needed or wanted. The University then offers the property to its other departments. If no department wants it, the University sells it. Since at least 1981, the University has had "an obligation to get the highest and best return on the sale of property." When the University decides to dispose of art, it auctions it to the highest bidder. UCLA cannot give property away, Trentalange testified. Nor, he testified over Crawford's objection, can it abandon property.

Trentalange further testified that for all items above a certain dollar threshold in value, each UCLA department keeps an inventory, describing the item and listing its location, value, means of acquisition, and means of disposal (if appropriate). An item's absence from an inventory list, Trentalange testified, does not mean that the University does not claim ownership. If an item were undervalued, for example, it might inadvertently be left off the list.

On cross-examination, Trentalange testified that he had learned of three people who identified the painting as having hung in Murphy Hall since the 1940s. Based on that fact, he executed a declaration in 1998 that UCLA owned *Frost Flowers*.

Crawford now appeals her conviction, arguing that the district court abused its discretion in admitting much of Trentalange's testimony, and that insufficient evidence of the University's ownership supported the jury's verdict.

## Analysis

Crawford's appeal raises two questions. The first is whether the district court abused its discretion by admitting Trentalange's recounting of the UCLA definition of "affiliated entity," that the property of an "affiliated entity" stays with the University when the entity dissolves, that UCLA is not authorized to abandon property, and that an asset's absence from University inventory lists does not indicate that UCLA makes no claim of title to the asset. The second is whether sufficient evidence supported the jury's implicit findings that Crawford had the requisite mens rea for any of the charged crimes. In particular, Crawford argues that the government did not produce sufficient evidence that UCLA owned *Frost Flowers*, and therefore did not produce sufficient evidence to prove criminal intent to deprive the rightful owner of its possession.

### A. *Evidentiary Issues*

■■■ The Court reviews evidentiary rulings at trial for abuse of discretion. *Old Chief v. United States*, 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). The Court reviews only for plain error the admission of testimony to which the defendant failed to object at trial. *United States v. Hanley*, 190 F.3d 1017, 1029 (9th Cir.1999).

■■■ A lay witness may testify only to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R.Evid. 701. A lay witness may testify as to an ultimate issue of fact, so long as the testimony is otherwise admissible. Fed. R.Evid. 704. The lay witness may not, however, testify as to a legal conclusion, such as the correct interpretation of a contract. *Evangelista v. Inlandboatmen's Union of Pacific*, 777 F.2d 1390, 1398 n. 3 (9th Cir.1985).

At trial, Crawford objected that three questions put to Trentalange called for legal conclusions. Crawford alleges that the court abused its discretion in overruling each objection, and that it plainly erred

in admitting two other instances of legal conclusion testimony, even though no objection was raised to the first and the second was elicited on cross-examination. As discussed below, the court did not abuse its discretion or otherwise err, except in allowing Trentalange's testimony that UCLA could not abandon property.

### 1. Objections Timely Made During Trial

■ First, defense counsel objected when the government asked Trentalange to "please explain what an affiliated organization is for the jury." After the court overruled the objection, Trentalange explained that "We consider an affiliated organization an organization that uses the University's name, facilities, personnel or equipment in the course of their activities."

The court did not abuse its discretion by overruling the objection. The question did not call for Trentalange to explain the legal definition of "affiliated organization," or to conclude that the Arthur Wesley Dow Association was an "affiliated organization." Nor did Trentalange so testify. He simply told the jury, based on his experience with UCLA's policies, how UCLA used the term "affiliated organization."

■ Second, defense counsel unsuccessfully objected when the government asked Trentalange "can UCLA abandon its property?" Explaining his answer of "no," Trentalange testified, "Again the same principle that I've mentioned before. If it has value, we have an obligation to retain that value, to either keep it or sell it and use those funds for other purposes on campus."

The court abused its discretion here. "Abandon" is a legal term, and the jury could have read Trentalange's statement to mean that UCLA cannot, as a matter of law, be found to have "abandoned" property. This interpretation is supported by his reference to his earlier testimony that "[e]verything the University has belongs to the public essentially; it's a public institution, and it would be the equivalent of

giving away public resources." If the jury believed that UCLA could not have legally abandoned the painting, the jury would likely conclude that Crawford must have stolen it, regardless of any evidence that UCLA did not claim ownership of it. For the reasons stated below, however, the error was harmless.

■ Third, defense counsel objected, to no avail, when the government asked "does the fact that a particular item doesn't appear on an inventory mean that the University is basically saying we don't own it?" Trentalange answered, "No." He did not conclude that, in such circumstances, UCLA would or would not own a particular item; he only testified that such a circumstance would not signify that the University intended to forgo ownership. He expressed no opinion as to whether UCLA owned *Frost Flowers*. Nor did the question ask him to so opine. The court did not abuse its discretion.

### 2. No Objection Made At Trial

■ Repeating her legal-conclusion argument, Crawford challenges on appeal the admission of Trentalange's testimony that the property of an "affiliated organization" belongs to the University and that, when the organization dissolves, its property remains with the University. Crawford did not object to the specific question that elicited this testimony, she did not explicitly make a continuing objection, and she did not move to strike. Nevertheless, she assumes without explanation that the admission of the testimony should be reviewed as though she had. The government notes the lack of an objection, and argues that the admission of the testimony should be reviewed for plain error. The Court agrees with the government that absent a specific objection, an explicit continuing objection, or circumstances that effectively precluded either of the two foregoing options, the admission of evidence should be reviewed for plain error.

The court did not plainly err by admitting the testimony. Trentalange testified as to the policy at UCLA, with which he

was familiar, for handling property of dissolved "affiliated organizations," a UCLA term. Trentalange did not interpret disputed law or offer an opinion about who owned *Frost Flowers*.

### 3. *Testimony Elicited on Cross–Examination*

 Finally, in response to a series of specific questions on cross-examination, Trentalange testified that he had asserted UCLA's claim of ownership in a sworn 1998 declaration: "I hereby advise the court on behalf of UCLA that UCLA presently claims it is the exclusive owner of the Dow painting and is entitled to sole possession of the Dow painting." He testified that he made the declaration because he had "learned of . . . three employees who identified the painting as having hung in Murphy Hall since the 1940s, for 40 or more years." The government had not covered this subject on direct examination. In these circumstances, any possible error was invited by defense counsel, who broached the subject of the declaration and asked the questions about its basis. *See United States v. Cabrera*, 201 F.3d 1243, 1249 (9th Cir.2000) (noting that defense counsel's own question invited any error). "[A]n error that is caused by the actions of the complaining party will cause reversal only in the most exceptional situation . . . [where] reversal is necessary to preserve the integrity of the judicial pro-

cess or to prevent a miscarriage of justice." *Id.* (quoting *United States v. Schaff,* 948 F.2d 501, 506 (9th Cir.1991)). The circumstances here do not warrant reversal based on the admission of this testimony. As discussed below, any error in its admission was harmless.

### B. *Sufficiency of the Evidence*

 Sufficient evidence supports a conviction if the evidence, viewed in the light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In her sufficiency-of-the-evidence argument, Crawford challenges only the evidence supporting the jury's implicit finding that she knowingly stole *Frost Flowers*. If sufficient evidence did not support a finding that UCLA owned the painting, she contends, then sufficient evidence could not have supported the mens rea required by all counts with which she was charged.[5] The government disputes both the premise that it had to prove UCLA's ownership, and the claim that sufficient evidence did not support such a finding.

 The government did not need to prove beyond a reasonable doubt that UCLA owned *Frost Flowers*, only that Crawford knew that she did not.[6] The

---

**5.** The court instructed the jury to convict Crawford for wire fraud only if she (1) knowingly devised or knowingly participated in a scheme or plan to obtain money or property by means of false or fraudulent pretenses, representations, or promises, as described in the indictment; (2) did so with the intent to defraud; and (3) in advancing or furthering or carrying out the scheme, transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce.

To be convicted of interstate transportation of property stolen, converted, or taken by fraud, Crawford must have (1) caused money or property worth at least $5,000 to be moved from one state to another; (2) known at the time the money or property crossed state lines that it was stolen, converted, or taken by

fraud; and (3) intended to deprive the owner temporarily or permanently of its use.

**6.** The dissent argues that the victim of a fraud must be identifiable beyond a reasonable doubt, and cites several cases to support this proposition. Slip Op. at 1094. Those cases, however, only hold that the person convicted of wire fraud must deprive someone of money or *tangible property,* as opposed to intangible property rights such as "the right to have the [government's] affairs conducted honestly." *McNally v. United States,* 483 U.S. 350, 352, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *see also United States v. Mitchell,* 867 F.2d 1232, 1232 (9th Cir.1989). In this case, the dispute is not about the type of property right, but rather whether the possessor of the property right must be identifiable. That we have never held to be an element of the offense of wire fraud.

days of homesteading are over, and the jury may presume that property has a rightful owner, even if the identity of the rightful owner is not immediately known to one who comes upon the property. See Cal. Civ.Code §§ 2080 & 2080.1 (a finder who takes charge of lost property becomes a depository for the owner, and must return the property if the owner is known, or must turn the property over to the police department if unknown).

█ Even if title to *Frost Flowers* had never passed to UCLA, Crawford's actions met the elements of the charges against her. The evidence at trial supported a finding that Crawford took possession of the painting by falsely claiming to her colleagues that she was having it restored, and by falsely telling others that her father had bought the painting years before; that she caused it to be moved over state lines; and that she intended permanently to deprive the true owner—whether that was UCLA, the heir to the Arthur Wesley Dow Association, or some other entity—of its use.

The interstate-transportation statute simply does not require that the transporter know the identity of the true owner. Likewise, the wire-fraud statute requires only that she have participated in a scheme to "obtain money or property by means of false or fraudulent pretenses, representations, or promises" with the intent to defraud. Neither statute requires that Crawford have known her victim's identity; only that there was proof from which the jury could conclude that she was not the lawful owner of the artwork entitled to dispose of it.

█ On appeal, Crawford asserts, and this Court is aware, of only one exception to the general rule that things have owners: abandoned property. Under California law, abandonment requires non-use accompanied by unequivocal and decisive acts showing an intent to abandon. *See Pacific Gas & Elec. Co. v. Zuckerman,* 189 Cal.App.3d 1113, 1145, 234 Cal.Rptr. 630, 650 (1987). Had Crawford proved the elements of abandonment at trial, she could

not have been convicted on any of the counts charged, because her sale of the painting would not have deprived the true owner of its use, and she would not have defrauded anyone. But Crawford did not request an instruction on abandonment. Even if she had, sufficient evidence supported a finding that no owner of the painting engaged in any unequivocal or decisive act showing an intent to abandon it. Moreover, sufficient evidence refuted any inference that, whether or not the painting actually had been abandoned, Crawford *believed* that the painting was abandoned, and thus lacked mens rea.

The relevant evidence instead showed that Crawford did not own the painting, and knew she did not: (1) she first gained custody of the painting by taking it from a UCLA storage room, or so the jury could infer from Cunningham's testimony that he placed it in the storage room and told Crawford about it, and Collas's testimony that the painting then turned up on Crawford's office wall; (2) while Cunningham had possession of the painting, he represented to her and to others that UCLA owned it; (3) Crawford expressed to Collas her understanding that UCLA owned the painting; (4) she lied to UCLA employees about why the painting no longer hung in her office; (5) she lied to her father's trust lawyer about who owned the painting and how it had been acquired; (6) she lied to her tax accountant about how she had acquired the painting; and (7) she and Weaver deposited the proceeds into an account in his name, not hers, though the money was also for her benefit.

█ This evidence sufficiently supports jury findings that Crawford did not own *Frost Flowers,* that she knew she did not own it, and that she intended to deprive the owner, whoever that may have been, of its use. Because the government did not need to prove UCLA's ownership, Trentalange's challenged testimony would not likely have affected the verdict and any error in its admission was harmless. *See United States v. Yin,* 935 F.2d 990, 994 (9th Cir.1991) ("A nonconstitutional evi-

dentiary error will be reversed for an abuse of discretion only if the court's ruling more likely than not affected the verdict.").

### Conclusion

Sufficient evidence supported the jury's implicit findings that Crawford did not own *Frost Flowers,* and that she knew she did not own it. We affirm Crawford's convictions.

**AFFIRMED.**

TASHIMA, Circuit Judge, dissenting:

I dissent because the majority reads an essential element out of the crime of wire fraud and because the evidence is insufficient to prove that essential element. Up to now, it has been the law that this crime requires an identifiable victim, *i.e., someone* must have been defrauded of his or her property. And, in fact, the indictment charges that:

> In or about January 1994, defendant CRAWFORD *stole* an original oil painting entitled "Frost Flowers, Ipswich 1889," signed by the artist Arthur Wesley Dow (the "Stolen Painting"), *which then belonged to* and was in the custody of UCLA, without the knowledge or permission of UCLA.

(Emphasis added.)

Today, without the citation of any authority to support it, the majority announces a new, and greatly expanded, rule-that "[t]he government did not need to prove beyond a reasonable doubt that UCLA owned *Frost Flowers,* only that Crawford knew that she did not." Slip op. at 1092. As the government's brief acknowledges, the case law is to the contrary. *See Carpenter v. United States,* 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (intent to defraud means an intent *to obtain property from someone* by deceiving or cheating them); *McNally v. United States,* 483 U.S. 350, 358, 107 S.Ct.

2875, 97 L.Ed.2d 292 (1987) (the "common understanding" of "to defraud" is *wronging one in his property rights* by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching"); *United States v. Utz,* 886 F.2d 1148, 1151 (9th Cir.1989) (observing that *McNally* limited mail fraud to "schemes to defraud *another* of money or property"); *United States v. Lew,* 875 F.2d 219, 222 (9th Cir. 1989) (observing that mail fraud requires "an intent to obtain money or property *from the victim* of the deceit"). We have reversed a mail fraud conviction for failure of the indictment to charge a crime because "[t]o charge a scheme to defraud under section 1341, *McNally* requires an allegation that Mitchell intended to *deprive the [victim] city* of money or property." *United States v. Mitchell,* 867 F.2d 1232, 1233 (9th Cir.1989) (emphasis added) (citations omitted).[1] The Sentencing Guidelines also recognize that there cannot be a scheme to defraud without a victim. *See* U.S.S.G. § 2F1.1(2) ("If the offense involved ... a scheme to defraud more than one victim, increase by 2 levels.").

Ignoring this law, the majority, in effect, has minted a new kind of victimless fraud. *See* slip op. at 1093 ("Even if title to *Frost Flowers* had never passed to UCLA, Crawford's actions met the elements of the charges against her.").

Here, even accepting the challenged lay opinion testimony at face value, the evidence was insufficient to sustain the conviction: The proven chain of title ends with the Arthur Wesley Dow Association. Michael Trentalange[2] testified, over objection, that an "affiliated organization" is one "that used the University's name, facilities, personnel or equipment in the course of [its] activities." The Dow Association certainly did not use the University's name and there is absolutely no evidence in the record that it used its "facilities, personnel

---

1. *Mitchell* also held that "[t]he Government cannot sustain [a] conviction on a theory different from that charged by the grand jury." *Mitchell,* 867 F.2d at 1234 (citations omitted).

2. Trentalange was UCLA's Executive Director of Information Systems. He had previously been, for a 10–year period, Executive Director of Gift Policy and Information Systems.

or equipment." Thus, there is no evidence that the Dow Association was an "affiliated organization,"[3] so that UCLA could not have succeeded to the Dow Association's ownership of *Frost Flowers*, even under Trentalange's dubious and legally conclusory testimony of what happens to the property of an "affiliated organization" that dissolves: "It would be similar to a department [of UCLA] owning equipment or property. From the very start it would be considered University property for the use of that particular affiliated organization, like it would be for the use of the Math Department, that kind of thing." I submit that this evidence is insufficient as a matter of law as a basis on which a rational trier of fact could find beyond a reasonable doubt that UCLA was the owner of *Frost Flowers*[4] and, thus, the victim of the scheme to defraud.

The majority opinion recognizes this deficiency in the evidence; thus, it strikes the requirement of an identifiable owner or victim from the elements of the crime and from the indictment even though the trial court's instructions required, *inter alia*, that Crawford "knowingly devised ... a scheme ... *as described in the indictment*." Slip op. at 1092 n. 5 (emphasis added).[5]

The majority asserts that "the jury may presume that property has a rightful owner, even if the identity of the rightful owner is not immediately known to one who comes upon the property." Slip op. at 1093 (citing Cal. Civ.Code §§ 2080 & 2080.1). California's finder law, however, is not a criminal statute and (even assuming that violation of the state's finder law is a crime) Crawford is not being criminally prosecuted for violation of the state's finder law. Moreover, as the majority recognizes, that principle is not absolute. Property can be abandoned.[6] *See Pacific Gas & Elec. Co. v. Zuckerman*, 189 Cal. App.3d 1113, 234 Cal.Rptr. 630, 650 (1987). California also recognizes adverse possession of personal property. *See First Nat'l Bank v. Thompson*, 60 Cal.App.2d 79, 140 P.2d 75 (1943); Cal.Civ.Proc.Code § 338(c) (providing three-year statute of limitations for "actions for the specific recovery of personal property").

In the end, the majority's case rests on its newly-minted rule that "the government did not need to prove UCLA's ownership" of the painting and its conclusion that the evidence was sufficient to support the jury's supposed finding "that Crawford did not own *Frost Flowers*," a theory neither charged in the indictment nor on which the jury was instructed.[7] Because I believe that this new rule is inconsistent with the Supreme Court's and our precedents in the area, I respectfully dissent.

---

3. As the majority specifically notes, Trentalange did *not* testify that the Dow Association was an "affiliated organization." Slip op. at 1091.

4. The only other "evidence" on this issue amounted to speculation. An archivist at UCLA testified that it was her "understanding" that the Dow Association "is affiliated with UCLA," but examination of her testimony reveals a total lack of foundation for this assertion.

5. The instruction on the interstate transportation of stolen property counts required the jury to find beyond reasonable doubt that Crawford "intended to deprive *the owner*" of the stolen property's use. Slip op. at 1092 n. 5 (emphasis added).

6. The majority faults Crawford for not having requested an instruction on abandonment. *See* slip op. at 1093. On the other hand, Crawford had no notice that the government would be relieved of the requirement to prove the charge in the indictment that she stole *Frost Flowers* from its "owner," UCLA.

7. The majority confuses the issue by stating that "[n]either statute requires that Crawford have known her victim's identity...." Slip op. at 1093. The question is not whether Crawford knew the victim's identity; rather, it is whether the government proved that there was a victim and whether that victim was the person or entity charged in the indictment as the victim.