**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PABLO ALVAREZ,
*Defendant-Appellant.*

Nos. 14-50506
15-50047

D.C. No.
3:14-cr-01748-GPC-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted March 10, 2016
Pasadena, California

Filed September 1, 2016

Before: Richard R. Clifton, Consuelo M. Callahan,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's restitution order in a case in which the defendant pled guilty to knowingly transporting illegal aliens.

The panel rejected the defendant's contention that the Supreme Court's decision in *Paroline v. United States*, 134 S. Ct. 1710 (2014), undermines this court's holding in *United States v. Batson*, 608 F.3d 630 (9th Cir. 2010), that restitution can be imposed as a condition of supervised release. Because *Paroline* did not establish that restitution is a punishment, the defendant could not succeed on his argument that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by imposing restitution based on facts not found by a jury.

The panel rejected the defendant's contention that the company from whom the defendant rented a car that was damaged while a co-defendant was transporting the aliens therein was not a victim of the offense. The panel held that the causal nexus between the crime of transporting aliens and the resulting damage to the car is not too attenuated, and that restitution to the rental car company is appropriate.

The panel held that the government did not breach the plea agreement by pursuing restitution even though the agreement did not mention it, where the government pursued

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

restitution subsequent to the defendant's clear statement that he expected to have to pay it.

The panel held that the district court's failure to advise the defendant at his change of plea hearing that he may be subject to restitution was harmless.

## COUNSEL

Jodi D. Thorp (argued), San Diego, California, for Defendant-Appellant.

Daniel E. Zipp (argued), Assistant United States Attorney; Peter Ko, Chief, Appellate Section, Criminal Division; Laura E. Duffy, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

CLIFTON, Circuit Judge:

Defendant Pablo Alvarez and a co-defendant were arrested by Border Patrol officers while transporting aliens who were in the United States illegally. Alvarez was driving his own Chevrolet, and his co-defendant was driving a Ford that Alvarez had rented. Border Patrol officers had set up spike strips along the road on which Alvarez and his co-defendant were traveling, and when Alvarez hit the spikes and came to an abrupt halt, Alvarez's co-defendant was unable to stop the Ford before it crashed into the Chevrolet. The crash caused significant damage to the rental car.

Alvarez pleaded guilty to transportation of aliens in the United States illegally in exchange for the government's promise to recommend a custodial term on the low end of the sentencing guideline range and a special assessment fee of $100.00. The plea agreement did not provide for restitution, but the presentence report recommended that Alvarez be required to pay for the cost of repairing the rental car. At his sentencing hearing, Alvarez acknowledged responsibility for the damage to the rental car and accepted his responsibility to pay restitution for the damage. Later, however, Alvarez changed his position, and at a subsequent hearing he argued that restitution was improper. The district court disagreed and ordered that Alvarez pay restitution for the damage to the rental car in the amount of $2,900.

On appeal, Alvarez argues that the Supreme Court's decision in *Paroline v. United States*, 134 S. Ct. 1710 (2014), established that restitution is a form of punishment. He contends, therefore, that restitution cannot be imposed as a condition of supervised release under the relevant statutes. For the same reason, he argues that restitution cannot be imposed based on facts not found by a jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Alvarez also urges us to find that the rental company, San Diego Rent-A-Car, was not a victim of his offense, that the government breached the plea agreement, and that the district court erred in declining to order specific performance as a remedy for its failure to adequately inform him of the potential consequences of a guilty plea. We conclude that restitution is not clearly a form of punishment and can be imposed as a condition of supervised release. We also conclude that the government did not violate the plea agreement and that the district court did not abuse its discretion. We affirm.

## I.  Background

On the morning of May 22, 2014, Border Patrol agents observed a blue Ford Taurus and a red Chevrolet Astro pull up near a group of seven suspected illegal aliens hiding on a hillside near a park in San Diego, California.  According to a Border Patrol agent on the scene, three of the aliens entered the Chevrolet, which was driven and owned by defendant Pablo Alvarez, and four entered the Ford, which was driven by Alvarez's co-defendant. Alvarez had rented the Ford from San Diego Rent-A-Car earlier that day.  The cars drove away at a high rate of speed, with Alvarez in the lead.

One of the Border Patrol agents followed the cars out of the park, while others went ahead to set up a spike strip to interdict the vehicles further down the road.  As Alvarez approached the location where the spike strip had been set up, one of the Border Patrol agents activated the emergency lights on his vehicle and signaled to Alvarez to pull over. Alvarez attempted to comply but could not stop the Chevrolet before hitting the spike strip.  The car's tires deflated, and the car came to an abrupt stop.  The driver of the Ford, who had been driving closely behind Alvarez, was unable to brake in time and collided with the Chevrolet.  The collision caused significant damage to the Ford.

Border Patrol agents placed both drivers and all seven illegal aliens under arrest.  Alvarez waived his rights and provided a statement to a Border Patrol agent on the scene.

A month later, the United States charged Alvarez with knowingly transporting illegal aliens, in violation of 8 U.S.C. § 1324(a)(1).  Alvarez pleaded guilty in exchange for a promise from prosecutors that they would recommend

sentencing for Alvarez at the low end of the advisory guideline. As will be detailed below, the plea agreement referred to restitution but did not provide that restitution would be recommended.

Alvarez appeared before a magistrate judge for a change of plea. During the colloquy, the court informed Alvarez that he was facing a maximum term of three years of supervised release and a maximum fine of $250,000. Alvarez responded that he understood that those were the maximum penalties he faced by pleading guilty to violating 8 U.S.C. § 1324(a)(1). The court did not inform Alvarez that he could face restitution for the damage to the Ford.

The presentence report submitted by the probation office recommended restitution to San Diego Rent-A-Car in the amount of $9,114.03. In response, Alvarez filed a sentencing memorandum agreeing that restitution was appropriate in this case but questioning the amount. The government subsequently filed a sentencing summary chart that recommended a custody term range but was silent regarding restitution.

Alvarez appeared before the district court for sentencing on October 31, 2014. At the hearing, the government did not recommend restitution. However, Alvarez's attorney conceded that the damage to the Ford would not have occurred but for Alvarez's transportation of undocumented aliens. Defense counsel further conceded that "restitution is appropriate in this case." Alvarez also personally addressed the court and stated, "I know I do have to pay restitution for the vehicle that was damaged. I know that for a fact, and I have no problem doing that." The district court proceeded to calculate the sentencing guideline range and imposed a

sentence of thirteen months of custody. The court then continued the hearing on restitution and ordered the government to provide additional information regarding the damage to the Ford.

Before the restitution hearing took place, the court appointed Alvarez new counsel. Alvarez's new counsel argued for the first time that the government had breached the plea agreement by recommending restitution and that restitution was not available as a condition of supervised release. The district court rejected that argument, and imposed restitution in the amount of $2,900. This appeal followed.

## II. Discussion

### A. Restitution can be imposed as a condition of supervised release

Alvarez first argues that restitution cannot be imposed as a condition of supervised release following the Supreme Court's decision in *Paroline*, 134 S. Ct. 1710. We review the legality of a restitution order de novo and the factual findings supporting the order for clear error. *United States v. Brock-Davis*, 504 F.3d 991, 996 (9th Cir. 2007).

In *United States v. Batson*, 608 F.3d 630 (9th Cir. 2010), we held that restitution can be imposed as a condition of supervised release under the authority of 18 U.S.C. § 3583 (the Supervised Release Statute) and 18 U.S.C. § 3563(b) (the Probation Statute). *Id.* at 635. The Supervised Release Statute grants federal courts the authority to order a condition of supervised release so long as the condition is "reasonably related" to the considerations in 18 U.S.C. §§ 3553(a)(1) and

3553(a)(2)(B)–(D), both of which set forth factors that courts can take into account in imposing a sentence.  18 U.S.C. § 3583.  The factors set forth in § 3553(a)(1) are "the nature and circumstances of the offense and the history and characteristics of the defendant," and the factors set forth in § 3553(a)(2)(B)–(D) are "the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  The Supervised Release Statute excludes from consideration those factors set forth in § 3553(a)(2)(A), which provide that courts may impose a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  None of these three factors can form the basis for a condition of supervised release.

The Supervised Release Statute does not specifically mention restitution, but it does permit courts, within limits including those described above, to impose "any condition set forth as a discretionary condition of probation" in the Probation Statute as a condition of supervised release. 18 U.S.C. § 3583(d).  One condition the Probation Statute sets forth as a discretionary condition of probation is restitution.  18 U.S.C § 3563(b)(2).  Thus, as we held in *Batson*, "the Supervised Release Statute, together with the Probation Statute, unambiguously authorizes federal courts to order restitution as a condition of supervised release for *any* criminal offense . . . for which supervised release is properly imposed."  *Batson*, 608 F.3d at 635.

Alvarez argues that the Supreme Court's decision in *Paroline* undermines our conclusion in *Batson* by

establishing that restitution is a form of punishment, meaning, according to Alvarez, that it is therefore excluded as a permissible condition of supervised release under § 3583. In *Paroline*, the Court noted that a restitution order requiring a possessor of child pornography to pay for damages caused by the actions of thousands of other independent possessors and distributors of child pornography could potentially raise issues under the Excessive Fines Clause of the Eighth Amendment. 134 S.Ct. at 1726. In so noting the Court observed that "[t]he primary goal of restitution is remedial or compensatory, but it also serves punitive purposes." *Id*. (internal citations omitted).

Later, however, *Paroline* clearly stated that restitution is fundamentally "remedial and compensatory" and repeatedly referenced restitution's remedial nature when emphasizing the need to compensate victims for harms suffered as a result of a crime. *See, e.g.*, *id.* at 1726 ("Just as it undermines the purposes of tort law to turn away plaintiffs harmed by several wrongdoers, it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this."). That there might sometimes be a secondary punitive motive in imposing restitution does not make restitution into a form of punishment proscribed by the Supervised Release Statute.

Indeed, the observation that restitution may have some punitive purposes is nothing new in our circuit. In *United States v. Green*, 722 F.3d 1146 (9th Cir. 2013), we noted that we have described restitution as a "hybrid, with 'both compensatory and penal purposes,'" but concluded that even so, restitution is not "clearly" punishment. *Id.* at 1150 (quoting *United States v. Rich*, 603 F.3d 722, 729 (9th Cir. 2010)). Thus, *Paroline* is not "clearly irreconcilable" with our prior circuit authority authorizing restitution as a

condition of supervised release, and *Batson* remains good law. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (holding that a panel may disregard circuit precedent only when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority.").

Because *Paroline* did not establish that restitution is a punishment, Alvarez also cannot succeed on his argument that the district court violated *Apprendi* by imposing restitution based on facts not found by a jury. As we stated in *Green*, the Ninth Circuit "has categorically held that *Apprendi* and its progeny . . . don't apply to restitution." 722 F.3d at 1149. For the reasons stated above, *Paroline* is not "clearly irreconcilable" with that authority, and *Green* is still viable precedent. *See Miller*, 335 F.3d at 892; *United States v. Eyraud*, 809 F.3d 462, 471 (9th Cir. 2015) ("We held in *Green* that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not apply to restitution orders, and Paroline does not invalidate that holding.").

## B. San Diego Rent-A-Car was a victim of Alvarez's offense

Next, Alvarez argues that restitution is improper because San Diego Rent-A-Car was not a victim of his offense. Under the applicable statutes, restitution can be imposed "only for the loss caused by the specific conduct that is the basis for the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990).[1] The Ninth Circuit has rejected a

---

[1] The *Hughey* opinion interpreted the restitution provisions of the Victim and Witness Protection Act of 1982, which is not at issue in this case. 495 U.S. at 413. However, in *Batson*, we held that *Hughey* applies

"but for" standard of causation in restitution, and held that instead, "restitution is proper only for losses *directly* resulting from the defendant's offense." *United States v. Meksian*, 170 F.3d 1260, 1262 (9th Cir. 1999) (quoting *United States v. Tyler*, 767 F.2d 1350, 1351 (9th Cir. 1985)). "It is clear from our cases that the phrase 'directly resulting' means that the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution, but the loss cannot be too far removed from that conduct." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir. 2001).

Alvarez argues here that San Diego Rent-A-Car's loss was not caused by the specific conduct that was the basis for the offense to which he pleaded guilty, but rather by the Border Patrol's decision to use a spike strip to stop his flight. Alvarez misunderstands the inquiry under our case law. In *United States v. Reed*, 80 F.3d 1419 (9th Cir. 1996), we confirmed that the *Hughey* standard applied to limit restitution to conduct that is "an element of the offense of conviction." *Id.* at 1420. In accordance with that principle, we overturned a lower court decision granting restitution to the owners of vehicles damaged in a crash that occurred in the process of apprehending the defendant, who ultimately pleaded guilty to being a felon in possession of a firearm. *Id.* *Reed* concluded that "fleeing the police is not part of the conduct underlying [Reed's] offense of conviction and thus cannot serve as the basis for a restitution order." *Id.* at 1421. In contrast, Alvarez pleaded guilty to a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), which makes it a crime to "transport[], or move[] or attempt[] to transport or move [an] alien within the

equally to awards of restitution imposed as a condition of supervised release. 608 F.3d at 636–37.

United States by means of transportation or otherwise" with knowledge or in reckless disregard of the fact that the alien is in the United States illegally.  As transportation is an element of the crime to which Alvarez pleaded guilty, restitution does not fall afoul of the limitations established by *Hughey* and *Reed.*

Nor does the causal chain between Alvarez's offense and the damage to the car "extend so far, in terms of the facts or the time span, as to become unreasonable." *Gamma Tech*, 265 F.3d at 928.  While the Border Patrol's use of a spike strip was an intervening cause of the damage to the Ford, a "[d]efendant's conduct need not be the sole cause of the loss" to the victim for restitution to be appropriate. *Id.* at 928. Rather, the law requires that "any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct." *Id*.  "[W]e have approved restitution awards that included losses at least one step removed from the offense conduct itself." *Id.*

Here, the damage to the Ford was no more than one step removed from Alvarez's crime.  As noted above, Alvarez's crime involved transporting aliens, which made it reasonably foreseeable that the instrument of transportation (i.e., the car) would be damaged in its commission.  Therefore, the causal nexus between the crime of transporting aliens and the resulting damage to the car in which the aliens were being transported "is not too attenuated," and restitution is appropriate. *Id.*

## C.  The government did not breach the plea agreement

Alvarez also argues that the government breached his plea agreement by requesting restitution even though the

agreement did not mention it.  We review a claim that the government has breached the terms of a plea agreement de novo.  *United States v. Whitney*, 673 F.3d 965, 970 (9th Cir. 2012).

The sequence of events leading up to the district court's ultimate restitution order is important here.  The plea agreement stated that the crime to which Alvarez was pleading guilty carried a maximum of 10 years in prison, a maximum $250,000 fine, a mandatory special assessment of $100 per count, and a term of supervised release of no more than three years.  It did not specifically warn that Alvarez may be required to pay restitution, but it did mention restitution twice.  First, in a subsection on supervised release, the agreement provided that Alvarez would not attempt to reduce any term of supervised release until he has "fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment."  Second, the agreement included a provision in which Alvarez promised to waive, "to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order."[2]

Restitution first came up in Alvarez's sentencing in the presentence report, which recommended that Alvarez pay $9,114.03 in restitution for the damage done to the car.  The government did not ask for restitution until Alvarez raised it himself at the sentencing hearing.  At that hearing, Alvarez's attorney told the court that "restitution is appropriate in this case" because "there was an actual loss to someone," and contested only the amount of restitution that the presentence

---

[2] The government has not sought to enforce an appeal waiver or argued that we should dismiss this appeal on that basis.

report had recommended. Alvarez himself then told the court that he knew that he would have to pay restitution for the damaged Ford and that he did not have any problem doing so. The district court agreed that restitution would be appropriate and asked the government for its position on the appropriate amount. As noted above, the court ultimately ordered restitution in the amount of $2,900.

"Plea agreements are subject to contract-law standards of interpretation." *United States v. Kamer*, 781 F.2d 1380, 1387 (9th Cir. 1986). Thus, "[i]n determining whether a plea agreement has been broken, courts look to what was reasonably understood by [the defendant] when he entered his plea of guilty." *Id.* (quoting *United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir. 1984)). The reasonable expectations of the defendant can be ascertained through "the objective proof on the record." *Id.*

In *Kamer*, we held that the defendant had shown a reasonable expectation that restitution would not be imposed when the district judge indicated multiple times that there would be no restitution and when "subsequent to signing the plea agreement [the defendant] told the judge it was his understanding that no restitution would be imposed." *Id.* at 1388–89. Moreover, the restitution amount in *Kamer* was "in the millions," and was therefore "material enough to demand express inclusion in the plea agreement." *Id.* at 1389 (quoting *United States v. Garcia*, 698 F.2d 31, 36 n.4 (1st Cir. 1983)).

Here, in contrast, Alvarez told the judge at the initial sentencing hearing, "I know I do have to pay restitution for the vehicle that was damaged. I know that for a fact, and I have no problem doing that." In addition, the total restitution ordered was under $3,000. Under these circumstances, it is

clear that Alvarez reasonably understood that he could be required to pay restitution.  The government did not breach the agreement by pursuing restitution subsequent to Alvarez's clear statement that he expected to have to pay it.

### D.  The district court's failure to advise Alvarez that he may be subject to restitution was harmless

Finally, Alvarez argues that the district court erred in imposing restitution even though it failed to warn him at his change of plea hearing that the imposition of restitution was a possible consequence of his guilty plea.  We review the adequacy of a Rule 11 plea colloquy de novo.  *United States v. Minore*, 292 F.3d 1109, 1115 (9th Cir. 2002).

Where restitution is a possible penalty for a crime, Rule 11 of the Federal Rules of Criminal Procedure requires that a defendant be advised of the court's authority to impose restitution before the court can accept a guilty plea.  Fed. R. Crim. P. 11(b)(1)(K).  Here, the government concedes that the court's failure to advise Alvarez of its power to impose restitution at the change of plea hearing constituted error.  However, any variance from Rule 11 "is harmless error if it does not affect substantial rights."  Fed. R. Crim. P. 11(h).  Under our case law, "a district court's failure to advise the defendant of the possibility of restitution [does] not constitute reversible error where the defendant was advised he was subject to a fine in an amount in excess of the restitution imposed."  *United States v. Crawford*, 169 F.3d 590, 592 (9th Cir. 1999).  The judge in this case informed Alvarez that he could face a fine of up to $250,000, which is far more than the $2,900 in restitution he was ultimately required to pay.  Thus, the Rule 11 error was harmless.

Moreover, the court acknowledged the mistake at the sentencing hearing and offered Alvarez the opportunity to withdraw his plea. Alvarez argued that this remedy was insufficient and instead requested specific performance in the form of a sentence that did not provide for any restitution. The district court concluded that specific performance was "unavailable" after noting that there was a "disconnect" between the harm of a possible involuntary plea and a remedy that would "limit the options that are otherwise available for supervised release." Alvarez now argues that the district court erred in failing to recognize its discretion not to impose restitution.

Because the district court's failure to advise Alvarez of the possibility that he might face restitution was harmless, the court was under no obligation to offer him any remedy for the error. *See Crawford*, 169 F.3d at 592–93. It nevertheless offered him the opportunity to withdraw his plea agreement, which is the standard remedy for a Rule 11 violation. *See McCarthy v. United States*, 394 U.S. 459, 472 (1969) ("[A] defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew."). A district court also has "the opportunity, *at its discretion*, to render harmless its earlier oversight by deleting the restitution portion of [a] sentence" imposed in violation of Rule 11(b)(1)(K). *United States v. Rogers*, 984 F.2d 314, 318–19 (9th Cir. 1993) (emphasis added). However, the district court is not required to offer that option, and the decision of the district court here not to eliminate restitution was well within its discretion.

We affirm the district court's order of restitution in the amount of $2,900.

**AFFIRMED.**