**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 12 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50166 |
| Plaintiff-Appellee, | D.C. Nos. |
| v. | 3:20-cr-00869-DMS-1 |
| | 3:20-cr-00869-DMS |
| VERONICA PEREZ, | |
| | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, Chief District Judge, Presiding

Argued and Submitted June 28, 2023
Pasadena, California

Before: N.R. SMITH, LEE, and VANDYKE, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge N.R. SMITH.

Veronica Perez tried to cross the United States–Mexico border with twenty

containers of rat poison in her purse and eight containers of other pesticides in her

truck. The government charged her with smuggling pesticides across the border in

violation of 18 U.S.C. § 545. A jury determined that she was guilty of smuggling

the rat poison but not the other pesticides. The district court sentenced Perez to sixty

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

days in custody and ordered her to pay $12,847.50 in restitution. She appeals her conviction and the restitution order on several grounds. We affirm Perez's conviction but vacate and remand the restitution order.

1. <u>The district court did not err in its answer to the jury's question</u>. Although a district court's "response to a jury inquiry" is generally reviewed for abuse of discretion, *United States v. Humphries*, 728 F.3d 1028, 1031 (9th Cir. 2013), "whether the district court's response to a jury question correctly states the law" is reviewed de novo, *United States v. Castillo-Mendez*, 868 F.3d 830, 835 (9th Cir. 2017).

Following this court's model jury instructions, the district court instructed the jury to determine whether the government proved that Perez (1) "knowingly smuggled merchandise into the United States without declaring the merchandise for invoicing as required by United States Customs law," (2) "knew that the merchandise was of a type that should have been declared," and (3) "acted willfully with intent to defraud the United States." Ninth Cir. Model Crim. Jury Instr. 21.1. The jury later sought clarification on the "distinction between 'failure to declare' and 'smuggling.'"

The court responded to the jury's question with a near-verbatim recitation of the elements listed in the jury instruction. It deviated only by failing to use the term

2

"knowingly smuggles." Perez argues that this omission constituted a misstatement of the law.

Section 545 does not define "knowingly smuggles," but the phrase's plain meaning covers a defendant who is consciously aware that they are importing or exporting merchandise in violation of customs law. *See Smuggle*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003); 21 Am. Jur. 2d Criminal Law § 126 (2023) (defining knowingly); *see also United States v. Saini*, 23 F.4th 1155, 1161 (9th Cir. 2022) (explaining that when a statute does not define a term, this court turns to dictionary definitions to determine its plain meaning).

It thus follows that a defendant who imports merchandise but fails to declare it—knowing that it must be declared and with the intent to defraud the United States—has "knowingly smuggled" that merchandise into the United States. *See also Keck v. United States*, 172 U.S. 434, 447 (1899) (explaining that the word "smuggling" "signified the bringing of the goods on land, without authority of law, in order to evade the payment of duty; thus illegally crossing the line of the customs authorities"). In short, the district court's response fully conveyed the substantive meaning of "knowingly smuggles" even if it did not use this phrase.

2. <u>The *Miranda* warnings adequately apprised her of her rights</u>. "The adequacy of a *Miranda* warning and the voluntariness of a suspect's statements are

questions of law that are reviewed de novo." *United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006).

*Miranda* requires that a suspect be informed of her constitutional right to remain silent before a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). An effective *Miranda* advisal "requires meaningful advice . . . in language which [a suspect] can comprehend and on which [she] can knowingly act." *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002). A *Miranda* warning is adequate if it is "clear" and not "affirmatively misleading." *Id.*

The warnings that Perez received "reasonably conveyed" the substance of her right to silence, and the record does not support her contention that the interpreter's statements misled her. *United States v. Loucious*, 847 F.3d 1146, 1149 (9th Cir. 2017). Perez received both oral and written *Miranda* warnings in Spanish, her native language, before she elected to speak with law enforcement. She asked follow-up questions about her rights, and her interviewers told her unequivocally in English and in Spanish that she could "stop questioning at any point in time." Finally, she ultimately exercised her right to silence when she ended the interrogation on her own volition, demonstrating her understanding of that right. Thus, Perez was adequately apprised her of her right to silence, even if the interpreter at times deviated from the law enforcement agent's *Miranda* warning.

4

3. Perez's statements to law enforcement were voluntary. A valid waiver of *Miranda* rights must be knowing, intelligent, and voluntary. *See Miranda*, 384 U.S. at 444. "A statement is involuntary if it is 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *United States v. Bautista-Avila*, 6 F.3d 1360, 1364 (9th Cir. 1993).

In this case, the Customs and Border Protection (CBP) agent who interviewed Perez did not extract statements from her by any threats or promises, implicitly or explicitly. Contrary to Perez's contentions, the agent never threatened Perez by insinuating that her failure to cooperate would have negative consequences, or otherwise "suggest that [her] exercise of the right to remain silent [would] result in harsher treatment by a court or prosecutor." *United States v. Harrison*, 34 F.3d 886, 891–92 (9th Cir. 1994). Instead, the agent repeatedly told Perez that she could end the questioning when she wanted. And the agent never conditioned Perez's ability to go home with her daughter on participation in the interrogation. Each time that Perez asked whether she would be able to go home with her daughter, the agent told her yes.

4. The district court did not err by refusing to provide an adverse-inference instruction. We review for abuse of discretion a district court's refusal to give an

5

adverse-inference instruction when potentially relevant evidence has been destroyed. *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013).

An adverse-inference instruction is warranted only when the prejudice to the accused from the destruction of the evidence outweighs the "quality of the Government's conduct." *See id.* at 1173. When evaluating the government's conduct, courts consider

> [1] whether the evidence was lost or destroyed while in [the government's] custody, [2] whether the Government acted in disregard for the interests of the accused, [3] whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, [4] if the acts were deliberate, whether they were taken in good faith or with reasonable justification.

*United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J., concurring); *United States v. Robertson*, 895 F.3d 1206, 1213 (9th Cir. 2018) ("The rule governing sanctions for lost or destroyed evidence is found in the controlling concurrence in" *Loud Hawk*.).

First, apart from the first factor—whether the video was in the government's custody when it was destroyed—none of the factors weigh in favor of an adverse-inference instruction. The video was not deleted because the government was negligent or because it deliberately disregarded Perez's rights. Instead, the video was deleted as a matter of course to save server space months before Perez was charged in this case. And the prosecuting attorneys were not involved in the deletion

6

of the video. *See, e.g.*, *United States v. Rosales-Aguilar*, 818 F.3d 965, 972 (9th Cir. 2016).

Second, it is not clear that Perez was prejudiced by the deletion of her video because it is doubtful that the video contained exculpatory evidence. The video did not include audio, so it could not have captured any of Perez's conversations with the customs agents. And it is unclear what images the video would have captured. According to the testimony of a border patrol agent, some cameras capture only a "bird's-eye view" of the vehicles. And although other cameras are situated a little lower, they do not always capture the driver of a vehicle—depending on the type of vehicle, the position of the driver, and the position of the agent.

Because Perez cannot establish prejudice from the destruction of the video or show that the government acted inappropriately in deleting it, the district court did not abuse its discretion in declining to give an adverse-inference instruction.

5. The district court's error in admitting testimony from lay witnesses about import law was harmless. Instructing the jury "as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)). Lay witnesses may not "testify as to a legal conclusion." *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001).

7

Here, an Environmental Protection Agency (EPA) official and a customs officer testified as lay witnesses but opined on import law. This testimony was inappropriate. *Id.* But because it did not prejudice Perez, the district court's error in admitting it was harmless. *See United States v. Perez*, 962 F.3d 420, 434–35 (9th Cir. 2020).

First, the customs officer's testimony that Perez would have had to declare merchandise acquired in Mexico did not prejudice Perez because the parties do not dispute that Perez did have to declare the pesticides in her vehicle. In any event, Perez invited this testimony when her attorney asked the customs officer if Perez had to declare the pesticides.

Second, the EPA official's testimony also did not prejudice Perez. The parties do not dispute that Perez had to submit a notice of arrival for the pesticides that she sought to import. So the official's statement that all imported pesticides require a notice of arrival could not have misled the jury. Perez also could not have been prejudiced by the official's statement that carbofuran and methamidophos pesticides are illegal in the United States because the jury declined to convict Perez of smuggling these pesticides. Finally, there is no evidence that the official's statement that all pesticides must be labeled in English prejudiced Perez. Contrary to Perez's argument, there is no indication that the jury interpreted that statement as "an entirely alternative, allowable means of finding . . . Perez guilty." Instead, the

8

jury asked clarifying questions that suggested that it carefully parsed the instructions that it received from the district court, not that it convicted Perez based on some uncharged theory involving the pesticides' labels.

6. <u>We vacate the district court's restitution order and remand for further proceedings</u>. A district court may impose restitution "only for the loss caused by the specific conduct that is the basis for the offense of conviction"—that is, the defendant's criminal conduct. *United States v. Alvarez*, 835 F.3d 1180, 1185–86 & 1186 n.1 (9th Cir. 2016) (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)). We review de novo the legality of a restitution order. *United States v. Gagarin*, 950 F.3d 596, 607 (9th Cir. 2020).

The district court erred by ordering Perez to pay the costs of safely disposing *all* the items that she was charged with smuggling—including for the pesticides that the jury found were *not* smuggled. *See Alvarez*, 835 F.3d at 1185–86. The court had the authority to order Perez to pay for costs of disposing the rat poison that the jury found that she had smuggled. But the jury did not find her guilty of smuggling the pesticides found in the back of her car. In other words, the court compelled Perez to pay for costs unrelated to her criminal conduct.

Stated differently, the government effectively seeks Perez to pay for disposal costs not for unlawful smuggling but rather routine border operations. CBP and EPA regulations sometimes require the destruction of substances that are seized at the

9

border regardless of whether the importer committed any crime. *See, e.g.*, 19 C.F.R. §§ 12.114, 12.117, 127.28(b), 162.46. So the pesticides that Perez transported may have been seized at the border and destroyed even if Perez had declared them.

We vacate the district court's restitution order and remand it for further review consistent with this disposition.

**AFFIRMED in part, VACATED and REMANDED in part.**

*United States v. Perez*, 21-50166
N.R. Smith, J., concurring in part and dissenting in part:

For the reasons explained by the majority, I agree that Perez's sentence should be affirmed. However, with respect to the restitution order, I would also affirm the district court.

The majority makes several errors in concluding that restitution is only appropriate with respect to the government's losses incurred to dispose of the rat poison, but not those incurred to dispose of the other pesticides that Perez brought into the United States.

First, the majority's parsing of the substances that Perez transported into the country to determine the restitution amount lacks any legal support. The district court was permitted to order restitution for the government's investigation costs that "were incurred as a direct and foreseeable result of the defendant's wrongful conduct." *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2014). In this case, those costs include the government's costs to destroy the rat poison as well as the other pesticides, because those costs arose only because Perez transported those dangerous (and banned) substances into the United States. *See id.* at 863–64 (holding that the district court correctly ordered restitution for the costs that the government incurred to conduct "[a] site investigation to determine what damage the defendant's conduct caused and to design an appropriate cleanup plan" where

the defendant violated the Clean Water Act).  Neither Perez nor the majority identifies any legal authority holding that the jury's note on the verdict form (that the jury's finding of guilt was unanimous with respect to the rat poison but not with respect to the other pesticides listed in the count) means that Perez's conviction for the only count of smuggling goods into the United States cannot support a restitution award for the government's losses incurred in destroying the other pesticides.  Perez also does not argue on appeal that the cost the government incurred to destroy the other pesticides is the type of cost "routinely incurred prosecuting criminal cases," *id.* at 864, thereby forfeiting such an argument.  The government's loss, in order to destroy the other pesticides, was a "direct[] result" of the underlying one count charge and conviction of smuggling pesticides into the country.  *United States v. Alvarez*, 835 F.3d 1180, 1186 (9th Cir. 2016).

Second, the majority's conclusion is premised on rampant speculation that "the pesticides that Perez transported *may* have been seized at the border and destroyed even if Perez had declared them" because "CBP and EPA regulations *sometimes* require the destruction of substances that are seized at the border," and therefore "the government *effectively* seeks Perez to pay for disposal costs not for unlawful smuggling but rather routine border operations."  There is no support in the record for this guess work about what the government would have done if Perez had declared the pesticides at the border.  And, yet again, the majority cites

to no legal authority to support its venture into hypotheticals as a basis to reverse a district court's restitution order.

Finally, the district court did not plainly err in relying on an estimate to calculate the amount of restitution ordered. *See United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007) ("We will uphold an award of restitution . . . if the district court is able to estimate, based upon facts in the record, the amount of victim's loss with some reasonable certainty.").

For these reasons, I dissent from the majority's decision to vacate and remand the restitution order.