**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GAGANDEEP SAINI,
*Defendant-Appellant.*

No. 19-50196

D.C. No.
2:17-cr-00185-
RHW-2

OPINION

Appeal from the United States District Court
for the Central District of California
Robert H. Whaley, District Judge, Presiding

Argued and Submitted November 16, 2021
Pasadena, California

Filed January 24, 2022

Before: Jay S. Bybee and Mark J. Bennett, Circuit Judges,
and Joseph F. Bataillon,[*] District Judge.

Opinion by Judge Bennett

---

[*] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

## SUMMARY[**]

---

### Criminal

The panel affirmed convictions for possession of device making equipment (18 U.S.C. § 1029(a)(4)), possession of at least fifteen unauthorized access devices (18 U.S.C. § 1029(a)(3)), aggravated identity theft (18 U.S.C. § 1028A(a)(1)), and possession of stolen mail (18 U.S.C. § 1708), in a case in which the defendant argued that the district court reversibly erred by instructing the jury that "intent to defraud" under 18 U.S.C. § 1029(a)(3) and (4) means an intent to deceive *or* cheat.

The panel agreed with the defendant that "intent to defraud" is an intent to deceive *and* cheat—an intent to deprive the victim of money or property by deception. The panel wrote that the plain and ordinary meaning of "intent to defraud" under § 1029(a)(3) and (4) is the intent to deprive the victim of money or property by deception, and that legislative history supports this interpretation.

Addressing the defendant's argument about the harmlessness standard stated in *Neder v. United States*, 527 U.S. 1 (1999), the panel rejected the defendant's claim that the omission of an element can be harmless only when the defendant made no attempt to dispute the element. The panel explained that whether the defendant contested the omitted element is not determinative; harmless error inquiry instead focuses on what the evidence showed regarding the defendant's intent to defraud and whether the court can

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error. The panel concluded that the instructional error was harmless, given the overwhelming evidence that the defendant had the intent to cheat his victims.

The panel rejected the defendant's evidentiary challenges as either meritless or unsupported.

## COUNSEL

Jonathan D. Libby (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Charles E. Fowler Jr. (argued), Assistant United States Attorney; Bram M. Alden, Chief, Criminal Appeals Section; Tracy L. Wilkison, Acting United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

BENNETT, Circuit Judge:

A jury convicted Gagandeep[1] Saini on four felony counts related to credit card fraud, identity theft, and mail theft. Saini challenges his convictions. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Saini's main argument is that the district court reversibly erred by instructing the jury that "intent to defraud" under 18 U.S.C. § 1029(a)(3) and (4) means an intent to deceive *or* cheat. Saini claims that "intent to defraud" is an intent to deceive *and* cheat—an intent to deprive the victim of money or property by deception. We agree. The plain and ordinary meaning of "intent to defraud" under § 1029(a)(3) and (4) is the intent to deprive the victim of money or property by deception. But given the overwhelming evidence that Saini had the intent to cheat his victims, the instructional error was harmless. Saini's remaining contentions are either meritless or unsupported.

## I.  Background

The grand jury returned a four-count superseding indictment that charged Saini with: Count 1, possession of device making equipment (a credit card encoder) in violation of 18 U.S.C. § 1029(a)(4); Count 2, possession of at least fifteen unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3); Count 3, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), based on Saini's unlawful possession of a "California Driver's License number

---

[1] Saini's first name has been misspelled in the caption throughout this action. This is the correct spelling of his name.

belonging to [Ahmar Siddiqi], during and in relation to the offense" charged in Count 2; and Count 4, possession of stolen mail in violation of 18 U.S.C. § 1708. The superseding indictment also charged Saini with aiding and abetting Paulina Schaiy to commit all four offenses. Schaiy had pleaded guilty to aggravated identity theft and agreed to cooperate with the government.

The following is the relevant evidence presented at Saini's trial.

In December 2016, Burbank Police Detectives Dugas and Starkov arrested Saini and Schaiy after finding substantial evidence linking them to identity and mail theft. The detectives testified about the events that led to the arrests. While on patrol in an area known for criminal activity, the detectives decided to approach two individuals who had been sitting in a parked car in a hotel parking lot for several hours. Saini, who was sitting in the driver's seat, told the detectives he did not have any identification, but gave his name and answered some questions. Schaiy, who owned the car, provided her identification. The detectives instructed Saini to get out of the car, and as he did, a cut straw with a burnt end (an item indicative of heroin use) fell from his lap onto the ground. Detective Dugas then searched Saini and found a driver's license that belonged to Ahmar Siddiqi, a credit card with Schaiy's name, and a prepaid American Express card. Saini said the license belonged to his "cousin," who had left it in the car. At trial, Siddiqi testified that he did not know Saini or Schaiy, and that his license had been mailed to him, but he never received it. The credit card imprinted with Schaiy's name had been reencoded with someone else's information.

The detectives found an encoder, a device that writes information onto a credit card's magnetic strip, inside the

car.  The prosecution played recordings of Saini admitting to Detective Starkov that the encoder belonged to him and claiming he had used it to create gift cards for a company called "Nothing Bundt Cakes."  A Nothing Bundt Cakes representative testified that the company had never contracted with Saini or Schaiy to create gift cards.

In the car, the detectives found a laptop bag, which contained a laptop, prepaid debit cards, credit cards imprinted with the names "Gagandeep S Saini" and "Gurmaj K Saini" (Saini's mother's name), and blank white cards with magnetic strips.  They also found a duffel bag, which contained other people's mail, prepaid debit cards, a notebook with "profiles" (people's names and their personal information) and a drawing of a postal arrow key (a key postal carriers use to open mailboxes at apartment complexes), and various forms of identification belonging to other people.  One of the cards found in the duffel bag had been reencoded with the name "Siddiqi," matching the name of the driver's license found in Saini's pocket.   The detectives also found another notebook in the car that concealed mail belonging to other people and had more handwritten "profiles."

The detectives searched Schaiy's purse and found a debit card with someone else's name, a counterfeit postal arrow key, and a cell phone.  The cell phone contained photos of credit cards with other people's names, photos of driver's licenses belonging to different people, more "profiles," and text messages between Schaiy and Saini about mail and identity theft.  For example, one text message referred to stealing mail: "[A]re you going mailboxing?"[2]  Another text

---

[2] Schaiy testified that "mailboxing" meant taking mail from the white "U.S. Mail" bins, which are stored under mailboxes.  Saini testified

message sent a link to "http://www.thehiddenwiki.net/buying-stolen-credit-cards-3/."

Postal Inspector Rodriguez testified that her investigation showed that some cards found in the car had been reencoded, meaning the information encoded on the magnetic strips was different from the information printed on the face of the cards. Using account numbers found on papers retrieved from the car, Inspector Rodriguez identified the issuing banks for some accounts. She contacted the banks and found that they had suffered about $13,000 in losses related to the accounts. The banks provided documents, confirming the losses, and those documents were admitted at trial. Inspector Rodriguez also testified that she had interviewed the account holders and determined that they had been victims of identity theft.

The district court allowed Postal Inspector Shen to testify as an expert, as the court had rejected Saini's pretrial motion to exclude his expert testimony. Inspector Shen testified about the types of information that are useful to identity thieves, and that thieves can get such information from stolen mail and by buying it on the dark web. Once they have the information, they can use it to bypass account security questions to gain access to existing accounts, request additional credit cards, and open new accounts. Inspector Shen explained that banks usually suffer the fraudulent charge losses, but sometimes the merchant or the customer bears the loss. He testified about postal arrow keys, explaining that they are used by mail carriers to access mailboxes in apartment complexes but can be easily

---

that he had sent a message to Schaiy asking if she was "mailboxing" because he knew that she went "mailboxing all the time" and stole other people's mail.

duplicated. Inspector Shen also described what an encoder does and explained that identity thieves can use the device to reencode cards with stolen information.

Schaiy, testifying for the government, said that she and Saini had been storing all their belongings in Schaiy's car at the time of their arrests. She testified that Saini had used her Amazon account to purchase the encoder found in the car and had used the device to reencode prepaid gift cards. Schaiy testified that she had reported to government agents that both bags found in the car belonged to Saini, that Saini had purchased the laptop using a fraudulent card, and that the counterfeit postal arrow key found in Schaiy's purse belonged to Saini. She had seen Saini purchase stolen account information online at least ten times, and some of the mail found in the car had been stolen by Saini. Saini once used a reencoded prepaid gift card to buy shoes for Schaiy. She and Saini had also used stolen credit card information to pay for hotel rooms. And on several occasions, they had used stolen credit card information to pay for hotel rooms that they then sold to other people for cash at about half the actual cost of the rooms.

Saini's main defense was that he was not involved in the fraudulent scheme, that nothing in the car belonged to him, and that Schaiy was lying. Saini testified. He said that nothing in the car belonged to him. He said that Schaiy had ordered the encoder on Amazon and that he did not recall saying the encoder was his. But he admitted that he had lied to the detective about making gift cards for Nothing Bundt Cakes. Saini testified that Schaiy had stolen mail, reencoded cards, and possessed the "profiles" and that he had nothing to do with those activities. But he testified that there were chat messages from him to another person in which he offered to resell a hotel room at a discounted price for cash,

and that the person had paid him and Schaiy cash for the room. He also admitted that he did not know Siddiqi and that Siddiqi was not his cousin, but he explained that he called Siddiqi his cousin because "[i]t's a Middle Eastern thing, Indian thing, you know. Brown people kind of refer to each other as cousins."

Saini had requested that the jury instruction on "intent to defraud" under § 1029(a)(3) and (4) be modified to include the underlined language: "An intent to defraud is an intent to deceive or cheat and obtain something of value."[3] In rejecting Saini's request, the court stated: "If you look at the offense itself, it just says you have to have an intent to defraud and then possession of something, so it doesn't include that you have to also intend to go get somebody's money." Thus, the court instructed the jury that "[i]ntent to defraud is an intent to deceive or cheat."

The jury convicted Saini as charged, and the court sentenced him to 36 months' imprisonment. Saini timely appeals only his convictions.

## II. Standard of Review

We review "*de novo* whether a trial court's jury instructions correctly stated the elements of a crime." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). But even if we find instructional error, we affirm the conviction if the error was harmless beyond a reasonable doubt. *See id.* at 1103.

---

[3] The government has taken the position that, even though Saini's proposed instruction retained the disjunctive "deceive or cheat" language, it was equivalent to this instruction: "An intent to defraud is an intent to deceive and cheat."

We review a district court's evidentiary rulings under the deferential abuse of discretion standard. *United States v. Hankey*, 203 F.3d 1160, 1166–67 (9th Cir. 2000). Under that standard, the admission of expert testimony "will be reversed only if 'manifestly erroneous.'" *Id.* at 1167 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997)). But "[w]e review evidentiary rulings to which no objection was made for plain error." *United States v. Orm Hieng*, 679 F.3d 1131, 1135 (9th Cir. 2012).

### III.  Discussion

### A.  Instructional Error

### 1.   "Intent to Defraud" under § 1029(a)(3) and (4)

Whether "intent to defraud" under 18 U.S.C. § 1029(a)(3) and (4) requires the intent to "deceive *or* cheat" or the intent to "deceive *and* cheat" is a question of first impression.  We hold that the plain and ordinary meaning of the statute requires an intent to deceive *and* cheat, which means the government must prove that the defendant had the intent to deprive a victim of money or property by deception. *See Miller*, 953 F.3d at 1103 (defining an "intent to deceive *and* cheat" as an intent to "deprive the victim of money or property by means of deception").

We start, of course, with the statutory text. *See United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020). Section 1029(a)(3) makes it a crime to "knowingly and with intent to defraud possess[] fifteen or more devices which are counterfeit or unauthorized access devices."  18 U.S.C. § 1029(a)(3).   Subsection (a)(4) makes it a crime to "knowingly, and with intent to defraud, produce[], traffic[] in, ha[ve] control or custody of, or possess[] device-making equipment." *Id.* § 1029(a)(4).  Because the statute does not

define "intent to defraud," we may refer to dictionary definitions to help determine its plain meaning.  *See Pacheco*, 977 F.3d at 767.  "The plain meaning of the text controls unless it is ambiguous or leads to an absurd result." *Id.*

"Intent to defraud" means "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."  *Intent to defraud*, Black's Law Dictionary 381 (5th ed. 1979); *see also id.* ("Defraud" means "[t]o deprive a person of property or any interest . . . by fraud, deceit, or artifice."); *Defraud*, Webster's New Collegiate Dictionary 298 (1977) ("[T]o deprive of something by deception or fraud.").[4]  Based on these definitions, the ordinary meaning of an "intent to defraud" as used in § 1029(a)(3) and (4) is an intent to deprive a person of money or property by deception.

Though our analysis begins and ends with the statutory text because it is unambiguous and our interpretation does not lead to any absurdity,[5] we note that legislative history

---

[4] Subsections (a)(3) and (a)(4) of § 1029 were enacted as part of the Comprehensive Crime Control Act of 1984.  Pub. L. No. 98-473, Tit. II, § 1602(a), 98 Stat. 1837, 2183 (1984).  We thus look to dictionaries in use at that time.  *See Gollehon v. Mahoney*, 626 F.3d 1019, 1023 (9th Cir. 2010) ("To determine the plain meaning of a statute, we traditionally refer to dictionaries in use at the time of the statute's enactment.").

[5] There is nothing absurd about Congress targeting fraud that seeks to deprive victims of money or property.  Indeed, Congress has targeted such harm in other statutes.  *See, e.g.*, *Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (holding that bank fraud under 18 U.S.C. § 1344(1) requires the intent to "deceive the bank *and* deprive it of something of value"); *United States v. Miller*, 953 F.3d 1095, 1098–99 (9th Cir. 2020)

supports our interpretation.   The relevant Senate Report states: "'With intent to defraud' means that the offender has a conscious objective, desire or purpose to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.'" S. Rep. No. 98-368, at 6 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3647, 3652 (footnote omitted) (quoting Black's Law Dictionary 381 (5th ed. 1979)).   The Senate Report indicates that Congress intended to criminalize the intent to deprive a person of money or property by deception, not just the mere intent to deceive.

We   are   unpersuaded   by   the   government's counterarguments.   The government claims that Congress would have expressly required an intent to cheat if it had so intended.   But this ignores that the ordinary meaning of "intent to defraud" in fact includes an intent to cheat.   The government also claims that the history and purpose of the statute show that Congress intended to criminalize only the intent to deceive.   But again, this argument ignores the ordinary meaning of "intent to defraud."   And the government points to nothing in the legislative history suggesting that Congress intended to target those who intend to deceive but do not intend to cheat victims out of money or property.   Indeed, the legislative history does not support the government's view, as it shows that Congress was mainly concerned about the loss of money and property caused by deception.   *See, e.g.*, S. Rep. No. 98-368, at 2 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3647, 3648

---

(holding that wire fraud under 18 U.S.C. § 1343 requires an intent to deceive and cheat).  And, in fact, it is logical (the opposite of absurd) that Congress would target criminals whose wrongdoing results in their pecuniary gain at the expense of defrauded victims.

(explaining that legislation is needed to target the staggering and increasing financial losses from credit and debit card fraud).

The government next points to case law. It argues that our decision in *Miller* is distinguishable. Even were that so, it would be irrelevant. In *Miller*, we held that the intent to defraud under the wire fraud statute, 18 U.S.C. § 1343, "requires the intent to deceive *and* cheat." 953 F.3d at 1103. But our holding today rests on the plain and ordinary meaning of a different statute, one that *Miller* neither considered nor discussed.

The government also claims that our decision would conflict with the Eleventh Circuit. We disagree. First, the government's argument is based on *United States v. Eppolito*, 701 F. App'x 805 (11th Cir. 2017) (per curiam), an unpublished memorandum disposition. Second, contrary to the government's interpretation of *Eppolito*, the court there did not hold that § 1029(a) does not require an intent to obtain something of value. In *Eppolito*, the court reviewed the alleged instructional error for plain error. 701 F. App'x at 807. Rather than reach the merits of the defendant's argument that § 1029(a)(3) always requires an intent to deceive and cause another to suffer financial loss or obtain something of value, the court held that regardless of any error, it wasn't plain. *Id.* at 807–08. Finally, our interpretation of the statute aligns with precedential Eleventh Circuit case law, which appears to require an intent to deceive for the purpose of causing another to suffer financial loss or obtaining something valuable. *See United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) (stating that "[i]ntent to defraud [under § 1029(a)(2)] has often been defined as the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or

bringing about some financial gain to one's self" (quotation marks omitted) (quoting *United States v. Peden*, 556 F.2d 278, 280 (5th Cir. 1977))).

The government also relies on the comment attached to the Ninth Circuit Model Criminal Jury Instruction on intent to defraud. The instruction reads: "An intent to defraud is an intent to deceive [or] [and] cheat." 9th Cir. Model Crim. Jury Instr. 5.12 (2021), https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Criminal_Instructions_2021_9_0.pdf. The comment states, in relevant part: "[F]or purposes of other statutes, such as conspiracy to defraud the United States (18 U.S.C. § 371), intent to defraud only requires intent to deceive, not to cheat." *Id.* The comment, however, does not discuss which formulation of the instruction is appropriate for violations under the statute at issue, § 1029(a), and more importantly, is only instructive at best. *See United States v. Tuan Ngoc Luong*, 965 F.3d 973, 983 (9th Cir. 2020) ("Pattern jury instructions are not authoritative legal pronouncements."); *see also* Caveat, 9th Cir. Model Crim. Jury Instr. iv ("The Ninth Circuit Court of Appeals does not adopt these instructions as definitive. Indeed, occasionally the correctness of a given instruction may be the subject of a Ninth Circuit opinion.").

In sum, the ordinary meaning of "intent to defraud" under § 1029(a)(3) and (4) requires an intent to deceive and cheat. Legislative history supports our interpretation. The district court therefore gave an erroneous jury instruction. But, as discussed below, the error was harmless.

## 2. Harmless Error Analysis

The omission of an element from jury instructions is subject to harmless error review. *See United States v. Conti*, 804 F.3d 977, 980 (9th Cir. 2015). "[W]here a reviewing

court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder v. United States*, 527 U.S. 1, 17 (1999).

### a. *Neder*'s Harmlessness Standard

We must first address Saini's argument about the harmlessness standard under *Neder*. *Neder* stated that an error is harmless "where a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested* and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Id.* at 17 (emphasis added). Focusing on the word "uncontested," Saini claims that this statement in *Neder* means that the omission of an element can be harmless only when the defendant made no attempt to dispute the element.[6] In other words, Saini's position is that "uncontested" should be given its literal meaning. We note at the outset that this position makes little logical sense, as whether an error causes harm would not likely turn on whether the defendant protested or interposed an objection. It would turn on the state of the actual evidence.

Saini also cites no Ninth Circuit precedent adopting this literal interpretation, and we have found none. Although we have not squarely addressed the issue, Ninth Circuit cases indicate that we do not apply "uncontested" literally, and we so hold here. For example, in *United States v. Gracidas-*

---

[6] Although Saini abandoned this claim during oral argument, Oral Arg. at 4:02 4:23, https://www.ca9.uscourts.gov/media/video/?2021111 6/19-50196/, we nonetheless address the arguments in his brief.

*Ulibarry*, 231 F.3d 1188 (9th Cir. 2000), the defendant contested the omitted element by arguing (but without admitting any supporting evidence) that he lacked the required specific intent because "he was asleep when the car was driven to the port of entry." *Id.* at 1197. Even though the defendant technically contested the element, we found the error harmless. *Id.* at 1197–98. Similarly, in *United States v. Cherer*, 513 F.3d 1150 (9th Cir. 2008) (en banc), we held that the instructional error was harmless even though the defendant contested the omitted element by arguing and pointing to evidence that he did not believe the victim was under sixteen. *Id.* at 1156.[7]

And other circuits have declined to read "uncontested" literally. The Eleventh Circuit did so when it applied *Neder* on remand from the Supreme Court in *United States v. Neder*, 197 F.3d 1122 (11th Cir. 1999) (*Neder II*), *cert. denied*, 530 U.S. 1261 (2000). In rejecting a literal interpretation, the Eleventh Circuit reasoned:

> Neder claims the Supreme Court held that the failure to instruct on materiality can never be harmless error unless the Government shows both that Neder never contested materiality and that the evidence overwhelmingly supports the materiality of every charged falsehood. However, the Supreme Court did not hold that omission of an element can

---

[7] *Cherer* also directly undermines Saini's argument that the harmless error analysis requires us to believe his evidence and draw all reasonable inferences in his favor. *See Cherer*, 513 F.3d at 1155–56. Given this, and because Saini cites no authority supporting his argument that "uncontested" should be given its literal meaning, we reject Saini's argument that we must accept his evidence and draw all reasonable inferences in his favor in conducting our harmless error review.

never be harmless error unless uncontested. Indeed, the Supreme Court emphasized that the correct focus of harmless-error analysis is: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" Stated another way, the focus is whether "the jury verdict would have been the same absent the error" or "whether the record contains evidence that could rationally lead to a contrary finding with respect to [materiality]." Thus, whether Neder contested materiality may be considered but is not the pivotal concern. Instead, what the evidence showed regarding materiality is the touchstone.

*Id.* at 1129 (alteration in original) (citations and footnote omitted); *see also id.* at 1129 n.6 ("Considered in context, the Supreme Court's statement clearly does not mean that omission of an element of an offense can never be harmless error unless uncontested. The statement means only that the fact materiality was not contested supports the conclusion that the jury's verdict would have been the same absent the error.").

The Third Circuit also recently rejected a literal interpretation, though with less analysis:

The Supreme Court has upheld convictions on harmless error review, for example, where "the omitted element was uncontested and supported by overwhelming evidence." We do not read "uncontested" literally to restrict harmless error to cases where the defendant

> made no attempt whatsoever to dispute the element, but rather more generally to mean the missing piece "is supported by uncontroverted evidence."

*United States v. Boyd*, 999 F.3d 171, 179 (3d Cir. 2021) (citation omitted).

We find these parts of *Neder II* and *Boyd* persuasive. They also align with our precedent issued after *Neder*, in which we found harmless error even though the defendants had technically contested the improperly omitted elements. *See Gracidas-Ulibarry*, 231 F.3d 1188; *Cherer*, 513 F.3d 1150. Thus, whether Saini contested the omitted element is not determinative. Our harmless error inquiry instead focuses on what the evidence showed regarding Saini's intent to defraud and whether we can conclude beyond a reasonable doubt "that the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 17.

### b. Evidence Proving Saini's Intent to Defraud

The evidence of Saini's intent to defraud—to deprive his victims of money or property by deception—was overwhelming. There was abundant evidence that Saini had control of or possessed the encoder and stolen account information found inside the car.[8] And it was uncontested that the stolen information had been used to make purchases,

---

[8] Saini was sitting in the driver's seat of the car. Schaiy testified that Saini's belongings were being stored in the car at the time of their arrests. And extensive evidence tied Saini to the items in the car: he admitted the encoder was his; credit cards found inside the laptop bag were imprinted with Saini's name and his mother's name; and a card found inside the duffel bag had been reencoded with the name Siddiqi, matching the name on the stolen driver's license found in Saini's pocket.

causing about $13,000 in losses to banks and merchants. This was strong evidence proving Saini's intent to defraud. *See United States v. Rogers*, 321 F.3d 1226, 1230 (9th Cir. 2003) ("It is settled law that intent to defraud may be established by circumstantial evidence.").

Saini's intent to defraud could also be inferred from his lie to the detective about why he possessed the encoder. *See Rogers*, 321 F.3d at 1230 (inferring intent to defraud from inconsistent statements and misrepresentations). Schaiy's testimony also showed that Saini intended to defraud his victims. Schaiy testified that she and Saini had engaged in a scheme in which they had used stolen credit card information to pay for hotel rooms and then resold those hotel rooms to people for cash at discounted rates. What's more, Saini's own testimony corroborated his participation in the scheme, as he admitted that he had resold a hotel room to a person at a discounted price for cash. The scheme itself—using other people's money to pay for rooms—was strong evidence of Saini's intent to defraud. *See United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (per curiam) ("[T]he scheme itself may be probative circumstantial evidence of an intent to defraud."). Given the overwhelming evidence establishing Saini's intent to cheat, the jury verdict would have been the same absent the instructional error.

Our conclusion is also supported by the jury's verdict, viewed in light of the record. In convicting Saini, the jury found that Saini either had an intent to deceive or cheat. Given the record, it is inconceivable that the jury could have found that Saini had an intent to deceive but not cheat.[9] This

---

[9] Saini has not argued that the jury could have found he had the intent to cheat but not deceive. Even if he had, that argument would have failed

is so because the government's evidence showed that the two elements went hand in hand—the only objective of the scheme was to deprive victims of money through deception. Moreover, Saini advanced no theory on which the jury could have found that he had an intent to deceive but not cheat. In fact, his entire defense was that he was simply innocent and none of the items in the car were his, despite the overwhelming evidence to the contrary.[10] The jury rejected the defense that none of the items in the car were his when it found him guilty. And the jury could not have found that he had the intent to deceive *and* that the items in the car were his, without also finding that he had the intent to cheat.[11]

In sum, the district court's instruction on the intent to defraud element was erroneous, as an intent to defraud under § 1029(a)(3) and (4) requires an intent to deceive and cheat. But the error was harmless because, given the overwhelming evidence proving Saini's intent to defraud, we are confident

---

for the same reason it is inconceivable that the jury could have found he had an intent to deceive but not cheat—the elements went hand in hand based on the evidence.

[10] Among the items in the car that Saini claimed weren't his was the laptop bag containing the credit cards imprinted with his own name and his mother's name, the prepaid debit cards, and the blank white cards with magnetic strips.

[11] We acknowledge Saini's argument that, because he possessed Siddiqi's driver's license and didn't admit to using the license to obtain anything of value, the jury could have found he had only an intent to deceive. This argument, however, is implausible based on the record. Saini never presented this argument to the jury. Further, his argument ignores the overwhelming evidence showing his intent to cheat, and the fact that the jury, having rejected his defense, was left with only one reasonable conclusion to draw from such evidence—that Saini possessed the stolen mail, encoder, "profiles," and various cards, including ones that had been reencoded, to cheat his victims.

beyond a reasonable doubt that the jury verdict would have been the same absent the error.

## B. Evidentiary Challenges

### 1. Inspector Shen's Testimony

Saini challenges the district court's admission of Inspector Shen's expert testimony. He argues that the district court abused its discretion by determining that Inspector Shen's testimony was (1) proper under Federal Rule of Evidence ("Rule") 702(a) because it concerned matters outside the common knowledge of the average layperson; and (2) not unfairly prejudicial under Rule 403 because of his impressive resume and qualifications.[12]

Inspector Shen's testimony mainly focused on details about *how* thieves obtain personal information and use such information to commit fraud. For example, he explained that thieves can easily obtain personal information on the dark web and described how that information can then be used to gain access to credit card accounts. The district court reasonably concluded that these types of details would help the jury, and thus the court properly admitted Inspector Shen's testimony under Rule 702(a). Indeed, that we have

---

[12] Rule 702(a) provides: "A witness who is qualified as an expert . . . may testify in the form of an opinion . . . if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702(a).

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

found similar modus operandi testimony to be the proper subject of expert testimony further supports that the district court did not abuse its discretion in admitting Inspector Shen's testimony. *See, e.g.*, *United States v. Alonso*, 48 F.3d 1536, 1540 (9th Cir. 1995) (holding that law enforcement testimony "discussing observations of people, counter-surveillance and surveillance" was the proper subject of expert testimony, as it concerned the "methods and techniques" used in criminal activity); *United States v. Valencia-Amezcua*, 278 F.3d 901, 909 (9th Cir. 2002) ("The admissibility of this expert testimony [about large-scale methamphetamine lab operations] is persuasively supported by our several prior decisions endorsing the admission of modus operandi testimony and in particular those suggesting that drug traffickers generally do not entrust large quantities of drugs to unknowing transporters.").

Saini's argument that Inspector Shen's impressive qualifications were unfairly prejudicial under Rule 403 is also unavailing. The district court rejected this argument. The district court's determination was reasonable, as Saini discusses no authority supporting that an expert's impressive qualifications alone can be unfairly prejudicial, and he cited no such authority to the district court. In sum, Saini fails to show that the district court abused its discretion in admitting Inspector Shen's testimony.

Saini also argues that the district court erred in admitting Inspector Shen's testimony because it was unnecessarily cumulative under Rule 403. We review this argument for plain error.[13] *See Orm Hieng*, 679 F.3d at 1135–36. Because

---

[13] Saini does not refute the government's argument that plain error review applies. And the record shows that Saini failed to sufficiently preserve the issue for appeal. Although Saini's counsel briefly made the

Saini makes no attempt to show that he has satisfied the plain error factors, his cumulative evidence argument under Rule 403 fails.

## 2. Other Government Officials' Testimony

In a heading in his opening brief, Saini claims that the district court erred by allowing other government officials to give both expert and fact testimony. Saini, however, presents no argument supporting this claim. We therefore decline to address it. *See United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2006) ("With no argument presented, [the court] decline[s] to address the claim.").

## IV. Conclusion

"Intent to defraud" under § 1029(a)(3) and (4) requires the intent to deceive *and* cheat, meaning the intent to deprive the victim of money or property through deception. Thus, the district court's instruction defining an "intent to defraud" as an intent to deceive *or* cheat was erroneous. But the error was harmless because the evidence establishing Saini's intent to defraud was overwhelming. Saini's evidentiary

---

cumulative evidence argument at the motion in limine hearing, the district court did not address it or rule on it, and Saini failed to make a contemporaneous objection at trial. *See United States v. Archdale*, 229 F.3d 861, 864 (9th Cir. 2000) ("Absent a thorough examination of the objection raised in the motion in limine and an explicit and definitive ruling by the district court that the evidence is admissible, a party does not preserve the issue of admissibility for appeal absent a contemporaneous objection.").

challenges are also unavailing.  We therefore affirm Saini's convictions.

**AFFIRMED.**