NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAY 15 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50272 |
| Plaintiff-Appellee, | D.C. No. 2:19-cr-00380-RGK-27 |
| v. | |
| GEORGE UGOCHUKWU EGWUMBA, AKA Ugo Aunty Scholar, AKA George Ugo, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50274 |
| Plaintiff-Appellee, | D.C. No. 2:19-cr-00380-RGK-58 |
| v. | |
| PRINCEWILL ARINZE DURU, AKA Arinze, AKA Arnzi Prince Will, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 25, 2025
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  NGUYEN and MENDOZA, Circuit Judges, and KERNODLE,[**] District Judge.
Partial Concurrence and Partial Dissent by Judge MENDOZA.

George Ugochukwu Egwumba and Princewill Arinze Duru appeal their convictions and sentences for participating in a global fraud and money laundering network.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm both convictions and sentences.

1.  We review defendants' challenges to the district court's jury instructions on aggravated identity theft and Egwumba's related claim of prosecutorial misconduct for plain error.  *See Greer v. United States*, 593 U.S. 503, 507–08 (2021) (instructions); *United States v. Dominguez-Caicedo*, 40 F.4th 938, 948 (9th Cir. 2022) (prosecutorial misconduct).  We review the denial of a Rule 29 motion de novo and will uphold defendants' convictions if "the evidence [viewed] in the light most favorable to the prosecution . . . is adequate to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *United States v. Parviz*, 131 F.4th 966, 970 (9th Cir. 2025) (quoting *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc)).

a.  The district court instructed the jury consistently with the statute, our model jury instruction in effect at the time, and the parties' joint proposal, that the

---

[**]    The Honorable Jeremy D. Kernodle, United States District Judge for the Eastern District of Texas, sitting by designation.

means of identification must be possessed—or in Duru's case, transferred, possessed, or used—"during and in relation to" conspiracy to commit wire fraud. 18 U.S.C. § 1028A(a)(1). However, the instruction was plainly erroneous because the court did not explain that the transfer, possession, or use must be "at the crux of what makes the underlying offense criminal." *Dubin v. United States*, 599 U.S. 110, 114 (2023).

The omission did not affect defendants' substantial rights. Neither defendant shows that if the district court had given the "crux" instruction, "there is a 'reasonable probability' that he would have been acquitted." *Greer*, 593 U.S. at 508 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). The wire fraud conspiracy was an agreement to facilitate various schemes in which fraudsters located overseas convinced victims to send money to bank accounts that money movers in the United States controlled. The conspirators' possession of the account details was at the crux of what made the conspiracy criminal because the fraudsters' access to U.S. accounts was "capable of influencing [a] person to part with money or property." As the government argued to the jury, it "[made] the victims believe that they were really sending money to a love interest in the United States, or a company based in the United States." *Cf. United States v. Ovsepian*, 113 F.4th 1193, 1207–08 (9th Cir. 2024) (holding that conspirators' unauthorized possession of patient records, which did not induce the fraudulently procured

3

payments, "was not at the 'crux' of the conspiracy to commit healthcare fraud" because it only potentially helped cover up the fraud in the event of an audit).

b. The district court did not plainly err by instructing, as the parties proposed, that "the Government need not establish that the means of identification of another person was stolen or used without the person's consent or permission." *See United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185–86 (9th Cir. 2015) (per curiam) (holding that § 1028A applies "regardless of whether the means of identification was stolen or obtained with the knowledge and consent of its owner"); *see also Parviz*, 131 F.4th at 972 (reaffirming *Osuna-Alvarez* because "*Dubin* explicitly declined to address the statutory meaning of 'lawful authority'" (quoting 18 U.S.C. § 1028A(a)(1))). Similarly, the prosecutor did not plainly commit misconduct by arguing that Egwumba's possession of the Chase account information was without lawful authority if "the bank account was used in connection with a criminal purpose."

c. Sufficient evidence supports the jury's finding that Egwumba possessed the Chase account information. *See United States v. Romm*, 455 F.3d 990, 1000 (9th Cir. 2006) (holding that defendant "possess[es]" data if he knows it resides on his physical device and can share it with others). It makes no difference that Egwumba's possession of the account information did not contribute to a substantive wire fraud offense. He was convicted of possessing it in relation to the

4

conspiracy to commit wire fraud, and the crux of conspiracy is a "deliberate plotting to subvert the laws." *Pinkerton v. United States*, 328 U.S. 640, 644 (1946). Conspiracy "does not require completion of the intended underlying offense." *United States v. Iribe*, 564 F.3d 1155, 1161 (9th Cir. 2009).

2. Defendants also challenge their conspiracy convictions. "We review de novo whether the district court's instructions adequately presented the defense's theory of the case" and "for abuse of discretion the formulation of an instruction that fairly and adequately covered the elements of the offense." *United States v. Keyser*, 704 F.3d 631, 642 (9th Cir. 2012).

a. The district court did not err by denying defendants' request for a multiple conspiracies instruction. Such an instruction is necessary "where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were *only* involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." *United States v. Torres*, 869 F.3d 1089, 1101 (9th Cir. 2017) (quoting *United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989)). Defendants identify no evidence that they were involved in separate, unrelated conspiracies.[1] "[T]he general test for a single conspiracy contemplates the

---

[1] Government counsel's discussion of "conspiracies" in her opening statement merely reflected that the scheme had two objects—money laundering and wire fraud—each charged as a separate conspiracy offense.

existence of subagreements or subgroups," *United States v. Shabani*, 48 F.3d 401, 403 (9th Cir. 1995), and the government did not need to show that defendants "knew all of the purposes of and all of the participants in the conspiracy," *United States v. Singh*, 979 F.3d 697, 722 (9th Cir. 2020) (quoting *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977)).

Nor did the district court's refusal to instruct on multiple conspiracies prejudice the defense. Defense counsel argued to the jury that defendants were not part of *any* conspiracy—not that they were part of a different conspiracy. Duru's counsel argued that his client was "an unwitting money mule," and Egwumba's counsel argued that there was "no agreement for [Egwumba] to do anything" and "no confirmation that he did anything." The jury disagreed, however, and sufficient evidence supports the conspiracy convictions.

b. Although the district court erroneously instructed that the "intent to defraud" element of wire fraud could be satisfied by proof of "intent to deceive *or* cheat" rather than "intent to deceive *and* cheat," *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020), the error was harmless beyond a reasonable doubt. The court also instructed that if it "misread something," the jury could "correct" the mistake because jurors would "have the actual instructions" during deliberations, and the written instructions correctly stated the law. *See United States v. Walter-Eze*, 869 F.3d 891, 911–12 (9th Cir. 2017). Moreover, the

6

government argued to the jury that the evidence showed both "intent to deceive" and "intent to cheat," and there was ample evidence of both. *See United States v. Saini*, 23 F.4th 1155, 1165 (9th Cir. 2022) ("[T]he government's evidence showed that the two elements went hand in hand—the only objective of the scheme was to deprive victims of money through deception.").

3. We review Duru's preserved challenges to the district court's evidentiary rulings for abuse of discretion and his unpreserved challenges for plain error. *See United States v. Baker*, 58 F.4th 1109, 1124 (9th Cir. 2023).

a. The district court did not abuse its discretion in admitting Duru's WhatsApp chats with his brother and "Izu. Ebenator." The chats were direct evidence of the conspiracy, *see* Fed. R. Evid. 404(b)(2), and the messages from Duru's brother were admissible as co-conspirator statements made in furtherance of the conspiracy, *see id.* R. 801(d)(2)(E). There was "some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement." *United States v. Mikhel*, 889 F.3d 1003, 1049 (9th Cir. 2018) (quoting *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988)). Duru's brother messaged Duru, "I wanted you to help in the Kudon stuff," and Chukwudi Igbokwe, who used the name Chris Kudon, testified that he worked with Duru's brother to commit romance fraud. The messages from Ebenator were admissible not "to prove the truth of the matter asserted," Fed. R. Evid. 801(c)(2), but as non-

7

hearsay that contextualized Duru's own statements. *See United States v. Barragan*, 871 F.3d 689, 705 (9th Cir. 2017).

b. The district court did not abuse its discretion in admitting Agent Anderson's testimony that Ebenator's reference to "small money" meant "[f]raud money." Anderson established the foundation for her knowledge. *See* Fed. R. Evid. 602. She reviewed more than 100,000 of the conspirators' messages, which were "primarily in English," and she "was able to understand" the Nigerian pidgin words through contextual clues.

The district court did not plainly err in admitting Agent Anderson's testimony about an exchange in which Duru's brother sought to contact one of Duru's associates "to make them receive MoneyGram." Anderson testified that Duru's response—"Him still dey fear"—meant that "the guy" was "still fearful" of the risk from moving money. This testimony referred to the associate's state of mind, not Duru's scienter.

4. We review the district court's interpretation of the Sentencing Guidelines de novo, its factual findings for clear error, and its application of the Guidelines for abuse of discretion. *United States v. Campbell*, 937 F.3d 1254, 1256 (9th Cir. 2019). Sentencing issues to which defendants did not object are reviewed for plain error. *See United States v. Hackett*, 123 F.4th 1005, 1010 (9th Cir. 2024). We

8

review a sentence's substantive reasonableness for abuse of discretion. *United States v. Thompson*, 130 F.4th 1158, 1164 (9th Cir. 2025).

a. The district court did not plainly err by relying on the Guidelines commentary's definition of "loss" as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A) (2021);[2] *see Hackett*, 123 F.4th at 1015. In determining the intended loss, the district court properly considered "the pecuniary harm that the defendant purposely sought to inflict," even if "impossible or unlikely to occur." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii) (2021).

The district court did not clearly err in finding that Egwumba tried to obtain a bank account that could accommodate a fraudster's anticipated $2 million wire fraud. Given that Egwumba expected a share of the victim's $2 million loss for his role as a middleman, the district court did not abuse its discretion in determining that Egwumba intended a loss of more than $1.5 million. *See* U.S.S.G. § 2B1.1(b)(1) (2021).

The district court did not clearly err in finding that Duru registered a fraudulent business and used it to open two bank accounts to receive and steal funds deposited by fraud victims. In particular, Duru agreed to look out for an anticipated $136,000 deposit from one fraud victim and expressed hope that "God

_____

[2] "U.S.S.G." refers to the U.S. Sentencing Commission's Guidelines Manual.

9

will make it go through." Duru expected to receive a share of that and other deposits for his role as a money mover. The district court did not abuse its discretion in finding that Duru intended a loss of more than $150,000.

b. The district court did not plainly err in finding that defendants' offenses "involved 10 or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(i) (2021). Defendants rely on the definition of "victims" in the Guidelines commentary,[3] but it is not clear that "victims" is "genuinely ambiguous," *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019), such that we may defer to the U.S. Sentencing Commission's application notes. *See United States v. Castillo*, 69 F.4th 648, 662–63 (9th Cir. 2023) (holding that it is "impermissible to defer to" commentary interpreting an "unambiguous" Guidelines provision). The Guidelines provide that "[u]nless otherwise specified," the "specific offense characteristics . . . shall be determined on the basis of . . . all harm that resulted from" the defendant's and his coconspirators' acts and omissions "and all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a), (a)(3). Because the Guidelines by default apply to both actual and intended harm and § 2B1.1 does not specify otherwise, the district court could reasonably conclude that "victims" unambiguously refers to persons upon whom

---

[3] As relevant here, the commentary defined "victim" as either "any person who sustained any part of" the "reasonably foreseeable pecuniary harm . . . from the offense" or any individual aggravated identity theft victim "whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. nn.1, 3(A)(i) & 4(E) (2021).

defendants and their coconspirators intended to inflict pecuniary loss—whether successfully or not.

c. The district court did not plainly err in finding that the conspiracy to commit money laundering "involved sophisticated laundering." U.S.S.G. § 2S1.1(b)(3)(B). The conspiracy involved both "fictitious entities" and "layer[ed] . . . transactions." *Id.* cmt. n.5(A)(i), (iii).

d. The district court did not plainly err in finding that "a substantial part of a fraudulent scheme was committed from outside the United States." U.S.S.G. § 2B1.1(b)(10)(B). Defendants were aware that money was coming into the United States from victims overseas and that some of the coconspirators were located in Nigeria.

e. The district court did not abuse its discretion in declining to apply a minor role adjustment to Duru's Guidelines range. Duru argues that his role was "far less than that of any of the three middlemen," but the district court properly considered Duru's culpability relative to "the average level of culpability of *all* of the participants in the crime." *Dominguez-Caicedo*, 40 F.4th at 961. It was not clearly erroneous to find that he was not "plainly among the least culpable of those involved in the conduct of [that] group." *Id.* at 960 (quoting U.S.S.G. § 3B1.2 cmt. n.4). Most of his coconspirators were money movers and fraudsters, and Duru

11

does not show that his role differed substantially from those of the other money movers.

f. The district court did not abuse its discretion in declining to apply a downward departure merely because "most [of] the sentences imposed on other defendants were 3 years or less." Duru's 57-month sentence on the conspiracy and wire fraud counts was at the low end of the Guidelines range, and "the equalization of sentences is an improper ground for departure if the court is attempting to equalize the sentences of co-defendants who are convicted of committing different offenses, even if their behavior was similar." *United States v. Banuelos-Rodriguez*, 215 F.3d 969, 978 (9th Cir. 2000) (en banc) (emphasis omitted).

**AFFIRMED.**

*United States of America v. George Ugochukwu Egwumba*, No. 22-50272, and
*United States of America v. Princewill Arinze Duru*, No. 22-50274

MENDOZA, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority with respect to sections 1(b), 1(c), 2, 3, 4(a), 4(c), 4(d), 4(e), and 4(f). I respectfully dissent as to sections 1(a), regarding defendants' convictions for aggravated identity theft under 18 U.S.C. § 1028A(a)(1), and 4(b), regarding the district court's application of U.S.S.G. § 2B1.1(b)(2)(A)(i) (2021).

1. I agree with my colleagues that the district court erroneously instructed the jury on aggravated identity theft, 18 U.S.C. § 1028A(a)(1), because the court did not convey that defendants' transference, possession, or use of a means of identification must have been "at the crux of what makes the underlying offense criminal." *Dubin v. United States*, 599 U.S. 110, 114 (2023). However, unlike my colleagues, I believe there is "'a reasonable probability the jury's verdict would have been different' had the jury been properly instructed." *United States v. Teague*, 722 F.3d 1187, 1192 (9th Cir. 2013) (quoting *United States v. Jenkins*, 633 F.3d 788, 807 (9th Cir. 2011)).

There is considerable daylight between the instruction the district court gave—that account information was possessed (for Egwumba) or transferred, possessed, or used (for Duru) "during and in relation to the offense of Conspiracy to Commit Wire Fraud, as charged in Count Two of the indictment"—and the

requirement after *Dubin* that this must have been "at the crux of" what makes

Conspiracy to Commit Wire Fraud as charged in Count Two of the indictment

criminal. 599 U.S. at 114. *Dubin* is clear that the transference, possession, or use

of account information must be more than "ancillary" to the offense, *id.* at 129, and

that "being at the crux of the criminality requires more than a causal relationship,

such as 'facilitation' of the offense or being a but-for cause of its 'success.'" *Id.* at

131. Following *Dubin*, a jury must find that the account information "is a key

mover" of or plays a "central role" in the criminality. *Id.* at 123.

Count Two of the indictment describes the manner and means of the charged

conspiracy as follows:

> coconspirators, would identify a potential victim of a BEC fraud, escrow fraud, romance scam, or other fraudulent scheme.
>
> i. As to a potential BEC fraud and escrow fraud victim, this would be done in part by hacking into the email system of either the potential BEC fraud victim or a party with whom the potential BEC fraud victim was communicating, intercepting communications, and directly communicating with the potential victim.
>
> ii. As to a potential romance scam victim, this would be done by employing false and fraudulent personas to virtually meet a potential victim on online dating or social media platforms and attempting to cultivate relationships such that the potential victim would incorrectly believe herself or himself to be in a relationship or to be friends with the false and fraudulent persona.

In my view, there is a reasonable probability a jury would not have found that Egwumba's mere possession of "the account number for a Chase account ending in 5027, belonging to Miniratu F. Mansaray" was a "key mover" of or played a "central role" in the criminal conspiracy described in the indictment. *Id.* at 114, 123.

Regarding Duru's conviction for aiding and abetting aggravated identity theft, I believe there is a reasonable probability that a jury would not have found that a person's activity was "at the crux of" the criminal conspiracy charged in the indictment when that person used "the account number for a Wells Fargo account ending in 4899, belonging to Princewill A. Duru." My colleagues say fraudsters' access to U.S. bank accounts like Duru's Wells Fargo "was 'capable of influencing [a] person to part with money or property.'" Maj. at 3. This may be true but, even if it is, the facts in this case lead me to think that such capability of influencing a person did not play a "central role" in and was not "at the crux of what makes the underlying offense criminal." *Id.* at 114, 123.

The fraudster whom Duru was charged with aiding and abetting convinced a romance fraud victim to send money directly to banks in Central Asia and Indonesia before the fraudster attempted to use Duru's U.S. bank account information. When the fraudster instructed the fraud victim to send money Duru's U.S. bank account, those funds were frozen and returned to the fraud victim

through the U.S. bank's anti-fraud measures.  The fraudster then convinced the fraud victim to transfer those funds directly overseas through other means.  This belies the argument that access to Duru's U.S. account was a key mover of the conspiracy because it "[made] victims believe that they were really sending money to a love interest in the United States, or a company based in the United States."

In *Dubin*, the Supreme Court instructed that "being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'"  599 U.S. at 131.  There is a reasonable probability that a jury would have found Duru's account information, which did not did not even facilitate a fraud scheme or cause its success, was not "at the crux of" the criminal conspiracy charged in the indictment.

2.  I would find the district court plainly erred by applying a two-level enhancement for an offense that "involved 10 or more victims" under U.S.S.G. § 2B1.1(b)(2)(A)(i) (2021).  This Guidelines provision is "genuinely susceptible to multiple reasonable meanings," *Kisor v. Wilkie*, 588 U.S. 558, 581 (2019), because the term "victims," which is not defined in the Guidelines, has many possible meanings.  *See United States v. Aloba*, No. 22-50291, 2025 WL 914116, at *2 (9th Cir. Mar. 25, 2025) (interpreting the word "victim").  In light of this ambiguity, I would turn to the Guidelines commentary to aid with determining which meaning of "victims" is operative in this provision.  *See United States v. Trumbull*, 114 F.4th

1114, 1117–18 (9th Cir. 2024) (deferring to the commentary's reasonable interpretation when there is genuine ambiguity).

Application Note 1 defines "victim" as "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense."  U.S.S.G. § 2B1.1 cmt. n.1.  Application Notes 4(E) specifies that, in a case involving a means of identification, "victim" includes "any individual whose means of identification was used unlawfully or without authority."  U.S.S.G. § 2B1.1 cmt. n.4(E).

The government did not identify any individuals who sustained actual loss from Egwumba's actions.  The government did identify 15 individuals whose passwords and login credentials—which are means of identification—were found in Egwumba's possession.  However, the government did not identify anyone whose means of identification "was *used* unlawfully or without authority."  U.S.S.G. § 2B1.1 cmt. 4(E) (emphasis added).  As to Duru, the government did not identify 10 or more victims who sustained actual loss.

Because the record does not show 10 or more victims attributable to Egwumba or Duru's actions, I would find the district court plainly erred by

applying a two-level enhancement for an offense that "involved 10 or more victims" under U.S.S.G. § 2B1.1(b)(2)(A)(i) (2021).

For these reasons I respectfully dissent in part.