NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 25 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50182 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00390-DSF-AB-4 |
| v. | |
| SYLVIA OLIVAS, AKA Sylvia Lee Gavaldon, | MEMORANDUM* |
| Defendant-Appellant. | |

On Remand from the United States Supreme Court

Argued and Submitted April 7, 2025
San Francisco, California

Before: HURWITZ, R. NELSON, and BUMATAY, Circuit Judges.

Sylvia Olivas appeals convictions under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, stemming from her involvement in criminal activities of the Canta Ranas Organization. We affirm.

1. The district court erred by admitting expert testimony from Officer Robert Rodriguez, Rene Enriquez, and Drug Enforcement Administration Agent Steve Paris without making express reliability findings. *See United States v.*

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

*Holguin*, 51 F.4th 841, 855 (9th Cir. 2022). But the error was harmless because the record demonstrates the reliability of these experts. *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1190 (9th Cir. 2019) (per curiam).

"Officers may testify about their interpretations of 'commonly used drug [or gang] jargon' based solely on their training and experience." *United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014) (quoting *United States v. Bailey*, 607 F.2d 237, 240 (9th Cir. 1979)). The record reveals that the experts had ample training and experience. Rodriguez served as a patrol officer and member of the "Problem-Oriented Policing Team" investigating drug and gang crimes for over a decade. He received over 100 hours of gang-specific training, participated in "[w]ell over 100" criminal investigations, including Canta Ranas, and had contacts with around 50 Canta Ranas members specifically. Enriquez was inducted into the Mexican Mafia, held a position of authority within it, and was familiar with the organization's internal politics. Paris participated in thousands of drug-related investigations related to street gangs, conducted drug-related undercover work, and worked with several confidential informants to investigate drug trafficking.

2. The district court did not err in admitting dual-role testimony from Officer Rodriquez and Enriquez. Although "we encourage district courts to 'clearly separate'" lay and expert testimony, *United States v. Rodriguez*, 971 F.3d 1005, 1019 (9th Cir. 2020), there is no single prescribed method to do so. A district court may

itself "clarify in the eyes of the jury the demarcation between lay and expert testimony," but "[t]hat distinction can also be revealed through direct or cross examination." *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007). In this case, the government repeatedly announced before the jury when it shifted from "lay" to "expert" testimony.

The district court also did not plainly err by giving the Ninth Circuit's model dual-role testimony instruction, which the parties jointly proposed, at the end of trial rather than during testimony. We have found plain error only where no dual-role instruction was given at all. *See United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015) (citing *Vera*, 770 F.3d at 1246). Even if it might be prudent to provide a dual-role instruction during witness testimony, failure to do so is not plain error. *See Holguin*, 51 F.4th at 863–64.

Enriquez's previous involvement with David Gavaldon, the gang leader at the core of the RICO conspiracy, also did not warrant exclusion. Enriquez's testimony was grounded in his personal experiences and "rationally based on [his] perception." Fed. R. Evid. 701(a). The record does not suggest any continued affiliation between Enriquez and the Mexican Mafia during the alleged conspiratorial acts, the earliest of which occurred two years after Enriquez left the gang.

3.    Nor did the district court err in admitting Enriquez's opinion that Olivas's actions suggested that she acted as a secretary for the gang. Expert

witnesses are "not permitted to offer a direct opinion on the defendant's guilt or innocence," *Freeman*, 498 F.3d at 906, but Enriquez asserted no such thing, *see United States v. Fleishman*, 684 F.2d 1329, 1335–36 (9th Cir. 1982) (expert may testify that defendant was the "lookout" in a drug-trafficking operation).[1]

4.      The district court did not err in permitting Case Agent Aaron Gutierrez to testify.  A law enforcement officer may testify about the meaning of ambiguous recorded statements based on the officer's "direct perception" of intercepted communications coupled with "other facts he learned during the investigation." *United States v. Gadson*, 763 F.3d 1189, 1207 (9th Cir. 2014) (quoting *Freeman*, 498 F.3d at 904–05).  "Such testimony is admissible even if the testifying officer was not a participant in the recorded conversation." *Id.*  "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." *Id.* at 1208; *see also Holguin*, 51 F.4th at 865 ("We have allowed officers to interpret communications based on the investigation as a whole and have not required all information supporting lay opinion to be placed before the jury.").

Gutierrez reviewed prison correspondence that he personally collected and other materials he secured throughout his years-long investigation.  The foundation

---

[1] We address Olivas's additional argument that Enriquez's testimony violated Federal Rule of Evidence 704(b) in a separately filed opinion.

laid concerning Gutierrez's investigation supported his lay opinions. *See United States v. Barragan*, 871 F.3d 689, 703–04 (9th Cir. 2017). This evidence was also "rationally based on the witness's perception" from his investigative activity. *Vera*, 770 F.3d at 1242 (quoting Fed. R. Evid. 701).

5.     Any error in the formulation of the instructions concerning RICO conspiracy was harmless. *See Rodriguez*, 971 F.3d at 1012 ("Jury instructions must be evaluated 'as a whole, and in context,' rather than in piecemeal." (quoting *United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir. 2002))). The instructions adequately stated the mens rea necessary for conviction, requiring the jury to find an agreement between two or more persons to conduct or to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, and that Olivas joined that conspiracy by willfully participating in it while knowing of its object and intending to help further or facilitate the scheme. The instructions therefore captured the underlying offense and the role required of Olivas. *See Smith v. United States*, 568 U.S. 106, 110 (2013) ("To convict a defendant of narcotics or RICO conspiracy, the Government must prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy)."); *Salinas v. United States*, 522 U.S. 52, 65 (1997) (holding that although a conspirator "must

intend to further an endeavor which, if completed, would satisfy all of the elements of [the underlying] criminal offense, . . . it suffices that he adopt the goal of furthering or facilitating the criminal endeavor").

6. Any error in the mens rea instruction for drug conspiracy redounded to Olivas's benefit and does not warrant reversal. *See United States v. Collazo*, 984 F.3d 1308, 1318–19 (9th Cir. 2021) (en banc); *United States v. Irons*, 31 F.4th 702, 717 (9th Cir. 2022) (similar instruction "provide[d] no grounds for reversal" because "[a]t worst, the instruction required the Government to prove more than *Collazo* required, but not less").

7. The district court did not err in refusing Olivas's proposed "willfully" instruction for her money-laundering charge. Because the instructions noted that the jury may not find guilt if it found Olivas did not think she was engaging with unlawful activity, willfulness was adequately outlined. *See Salinas*, 522 U.S. at 65.

8. The district court did not plainly err by giving the general "knowingly" instruction. Olivas's argument largely turns on the comments to the model money-laundering instruction. But the model instructions are not authoritative, and their comments are "only instructive at best." *United States v. Saini*, 23 F.4th 1155, 1162 (9th Cir. 2022). And given the overwhelming evidence of Olivas's participation in the gang's money-laundering scheme, she has not shown that any plain error affected her substantial rights or the fairness of the proceedings.

6

9. The district court did not erroneously admit statements about "La Senora" under the co-conspirator hearsay exception. "Under Federal Rule of Evidence 801(d)(2)(E), a statement of one coconspirator is admissible nonhearsay against other coconspirators as an admission of a party-opponent, if the statement was made during the course of and in furtherance of the common objectives of the conspiracy." *United States v. Tamman*, 782 F.3d 543, 553 (9th Cir. 2015).

The district court's determination that these statements were made in furtherance of the conspiracy is not clearly erroneous.[2] *United States v. Moran*, 493 F.3d 1002, 1010 (9th Cir. 2007) (per curiam). These statements fall under the exception because they "further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy." *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988). Statements made to "higher ups" may be "in furtherance" of the conspiracy. *See id.* at 1536 (citing *United States v. Moody*, 778 F.2d 1380, 1382 (9th Cir. 1985)).

**AFFIRMED.**

---

[2] Nor were the statements unduly prejudicial, as they did not directly implicate Olivas. *See United States v. Williams*, 423 F.2d 696, 696 (9th Cir. 1970) (per curiam) (finding no error in admission of statements that did not implicate appellant).

7